Archie Lee STEVENS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2010–CA–001913–MR.

Court of Appeals of Kentucky.

Oct. 14, 2011.

Tim Lavender, Whitley City, KY, William Gary Crabtree, London, KY, for appellant.

Jack Conway, Attorney General of Kentucky, John Paul Varo, Assistant Attorney General, Frankfort, KY, for appellee.

Before TAYLOR, Chief Judge; DIXON and LAMBERT, Judges.

*OPINION*

LAMBERT, Judge:

Archie Stevens entered a conditional plea of guilty to two counts of receiving stolen property of a value of $300.00 or more. The McCreary Circuit Court entered judgment sentencing him to imprisonment of one year in the penitentiary on each count, to run consecutively for a total of two years, with the sentence probated for three years. Stevens appeals, contending the trial court erred in failing to sustain his supplemental motion to suppress a search of his property. After careful review, we affirm.

On August 7, 2007, a McCreary County Grand Jury indicted Stevens for two counts of receiving stolen property over $300.00, a violation under Kentucky Revised Statutes (KRS) 514.110. Count one of the indictment related to a stolen Kawasaki 4x4 Mule utility vehicle (Kawasaki), which was found on Stevens' property on June 28, 2007. Count two related to a stolen 2003 Honda all-terrain vehicle (Honda), which was found on Stevens' property the same day. Stevens was arrested following the indictment and pleaded not guilty.

On November 30, 2007, Stevens moved to suppress evidence pertaining to the stolen Kawasaki. The basis of that motion was that the Kawasaki had been found on his property following an impermissible warrantless search in violation of his constitutional rights. The trial court conducted a suppression hearing on December 17, 2007, at which the evidence below was presented to the court.

On June 28, 2007, McCreary County Deputy Sheriff Tom Smith received a call from Rusty Spradlin advising that he had located a Kawasaki that had been stolen from his grandfather, Roscoe Spradlin. The Kawasaki had been reported stolen to Deputy Smith two or three days earlier. Spradlin reported that the Kawasaki had been found on Stevens' property located off Kingtown Spur Road in McCreary County, Kentucky. Deputy Smith, along with Sheriff Gus Skinner and two other

deputies, went to Stevens' property, which is located near the Kentucky–Tennessee state line.

The officers entered onto Stevens' property and drove up a hill in his driveway before they observed the rear end of the Kawasaki pulled into a bay in a shed with no doors. Skinner testified that the length of the driveway was approximately one-tenth of a mile. Neither Stevens nor his wife was present when the officers arrived. The officers admitted that the Kawasaki could not be seen from Kingtown Spur Road, a public road. Sheriff Skinner testified that his office could have applied for a search warrant of Stevens' property upon receiving the information from Spradlin, but admitted that they did not have a search warrant when they entered upon Stevens' property.

When he observed the Kawasaki, Deputy Smith entered the shed to see if the serial number matched that of the Spradlin's stolen Kawasaki. Smith had to call the Kawasaki dealer to learn the location of the serial number, which was under the seat. Deputy Smith determined that the serial number matched and confirmed the Kawasaki was the stolen Spradlin Kawasaki.

Stevens arrived home a short time later and spoke with Sheriff Skinner. He indicated that he purchased the Kawasaki at a flea market. Sheriff Skinner then accompanied Stevens to the location in Tennessee where he allegedly purchased the Kawasaki.

During the suppression hearing, the officers indicated they could not see inside the shed from Kingtown Spur Road and stated that they did not have search warrants when they entered upon Stevens' property. However, they testified that they were responding to the radio call, and the Kawasaki was in plain view from Stevens' driveway in the open shed. The

Commonwealth contended that the search was valid because the officers conducted an open fields search and found the Kawasaki in plain view.

The trial court disagreed, however, and granted Stevens' motion to suppress the evidence of the Kawasaki. The court noted that while the Kawasaki was in open view, the officers had to check the Kawasaki's serial number in order to identify it as being stolen, and thus at the point they had to search for the serial number, the officers needed a search warrant. The trial court subsequently entered a written order granting the motion to suppress. In its order, the court noted there were no exigent circumstances permitting the warrantless search of the shed and that the officers had acknowledged they could have left the scene and obtained a search warrant.

Thereafter, Stevens filed a supplemental motion to suppress the search warrant and seizure of the Honda four-wheeler referred to in count two of the indictment. Stevens alleged that following the warrantless search and seizure of the Kawasaki, officers obtained written consent to search his remaining property, which was signed by his wife, Sheila Stevens. The officers then continued their search and seized the Honda. Stevens contended that since the warrantless search and seizure of the Kawasaki was invalid, the subsequent consent to search and resulting seizure of the Honda was also invalid under the "fruit of the poisonous tree" doctrine.

The parties presented additional evidence at the hearing on the supplemental motion to suppress on September 15, 2008. That evidence indicated that after Sheriff Skinner and Stevens left the premises and went to talk to the individual who allegedly sold the Kawasaki to Stevens, the other officers remained on the premises waiting

for the Kawasaki to be removed. While they were there, they asked about other items that may be on Stevens' property. Stevens called his wife and told her to consent to a search of the rest of the property. Sheila Stevens gave oral consent for the officers to search and then subsequently signed a written consent to search form authorizing Deputy Smith to search the premises. The consent form was signed at 2:45 p.m. Sheila Stevens then unlocked a garage, and Deputy Smith recovered the Honda four-wheeler referred to in count two of the indictment. Sheila Stevens testified that this was the first time she had seen the Honda and that she did not previously know it was there.

At the conclusion of the hearing, the trial court denied the supplemental motion to suppress, finding that Sheila Stevens gave consent to search and that therefore the search was "a valid and legal search based upon consent given to law enforcement."

Thereafter, on July 1, 2010, Stevens appeared in open court with counsel and withdrew his former plea of not guilty, and pursuant to Kentucky Rules of Criminal Procedure (RCr) 8.09 and *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), entered a conditional plea of guilty to two counts of receiving stolen property. He reserved his right to appeal the trial court's order denying the supplemental motion to suppress. On September 20, 2010, he was sentenced to two consecutive one-year sentences, probated for a period of three years. This appeal now follows.

On appeal, Stevens argues that because the initial warrantless search and seizure of the Kawasaki was invalid, the subsequent consent to search and seizure of the Honda was void pursuant to the "fruit of the poisonous tree" doctrine. Thus, Stevens argues that the trial court erred in denying his supplemental motion to suppress the search and seizure of the Honda. The Commonwealth counters that the trial court properly denied the supplemental motion, arguing that the initial search and seizure of the Kawasaki was valid, and therefore the seizure of the Honda was not tainted as the "fruit of the poisonous tree." Stevens responds that the Commonwealth did not appeal the trial court's ruling on the initial motion to suppress the Kawasaki, and thus any argument that that search and seizure was valid is not properly before this court.

■ Initially, we agree that the Commonwealth did not file a cross-appeal preserving the argument that the trial court erroneously granted the initial motion to suppress the search and seizure of the Kawasaki. Thus, its current arguments on appeal that the initial search and seizure was valid are without merit, as they were not preserved for appeal and are not properly before this Court.

■ Even if this issue were properly before us, we would uphold the trial court's ruling. This Court's standard of review of a trial court's ruling on a motion to suppress is as follows:

An appellate court's standard of review of the trial court's decision on a motion to suppress requires that we first determine whether the trial court's findings of fact are supported by substantial evidence. If they are, then they are conclusive. Based on those findings of fact, we must then conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law.

*Commonwealth v. Neal*, 84 S.W.3d 920, 923 (Ky.App.2002) (footnotes omitted). In the instant case, the trial court's findings of fact are supported by substantial evi-

dence, and thus are conclusive. Looking at the trial court's application of law to those facts, we agree with the trial court's ultimate conclusion, but for different reasons.

It is well-settled that items may be seized without a warrant under the plain view exception. *Hazel v. Commonwealth*, 833 S.W.2d 831, 833 (Ky.1992). In *Hazel*, the Kentucky Supreme Court recognized that three elements must be met before evidence may be seized pursuant to the plain view exception:

> First, the law enforcement officer must not have violated the Fourteenth Amendment in arriving at the place where the evidence could be plainly viewed. Second, "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must have a lawful right of access to the object itself." Finally, the object's incriminating character must also be immediately apparent.

*Id.* (internal citations omitted). Arguably, the officers were not where they had a right to be when they initially observed the Kawasaki. It seems that the Kawasaki was located on the curtilage of Stevens' home, and thus the officers were not simply conducting a search of open fields. However, because we ultimately agree with the trial court's legal conclusion that the search and seizure of the Kawasaki was impermissible, we affirm the trial court's judgment granting the motion to suppress the search and seizure of the Kawasaki.

We now turn to an examination as to whether the initial illegal search taints the search and seizure of the Honda four-wheeler as the "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In 8 Leslie W. Abramson, *Kentucky Practice, Criminal Practice and Procedure* § 17:5 (5th ed.2010), the elements of the "fruit of the poisonous tree" doctrine are set forth:

> The exclusionary rule requires the suppression of any evidence that is either the direct or indirect result of illegal police conduct. The fruit of the poisonous tree doctrine precludes not only the admissibility of evidence which is the direct result of a violation of the defendant's rights, but also any evidence obtained by an exploitation of that violation. In order for a defendant to invoke the doctrine, defendant must show that: (1) he or she has standing to challenge the original violation, i.e., the tree; (2) the original police activity violated his or her rights; and (3) the evidence sought to be admitted against him or her, i.e., the fruit, was obtained as a result of the original violation....

(Footnotes omitted). We agree with Stevens that he has standing to challenge the search and seizure of his property, and obviously the trial court held that the original police activity in making the warrantless search and seizure of the Kawasaki from his garage violated Stevens' rights. Thus, the only remaining matter for our consideration is whether the search and seizure of the Honda was obtained by exploitation of the original violation or whether Sheila Stevens' oral and written consent to search purges the taint of the illegal activity.

▪▪▪ The exclusionary rule provides that evidence obtained through an illegal search or seizure is not admissible against an accused. *Wilson v. Commonwealth*, 37 S.W.3d 745, 748 (Ky.2001). The rule includes evidence stemming directly from official misconduct as well as derivative evidence that is tainted or fruit of the poisonous tree. *Id.* However, it is well recognized that "not ... all evidence is 'fruit of the poisonous tree' simply because

it would not have come to light but for the illegal actions of the police." *Brown v. Illinois,* 422 U.S. 590, 599, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (internal citation omitted). Thus, the issue is "whether, granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id.* (internal citation omitted).

■ This Court recognizes that a subsequent consent to search may dissipate the taint of a prior illegality. *Baltimore v. Commonwealth,* 119 S.W.3d 532, 540 (Ky. App.2003). Thus, Stevens' argument that his wife's consent was invalid simply because it followed the search and seizure of the Kawasaki Mule is not necessarily correct. "The admissibility of the challenged evidence involves a two-part test: (1) whether the consent was voluntary and (2) whether the consent was an independent act of free will." *Id.* (internal citations omitted).

■ Regarding the first inquiry, the evidence indicates that Sheila Stevens' consent to search was voluntary and was not the product of coercion or duress. She orally consented to the search, and after her husband called and told her to consent, she signed a written consent form. Nothing in the record indicates that the police intimidated her into signing the consent, nor has Stevens argued such in his brief to this Court.

■ Looking at the second inquiry, "[f]actors relevant to whether consent was an independent act of free will include: (1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct." *Id.* at 541, n. 34. Here, the record reflects that Sheila Stevens' consent was obtained approximately three hours after the discovery of the stolen Kawasaki. This substantial period of time supports attenuation more than consent obtained in close proximity to the initial violation. *See United States v. Simpson,* 439 F.3d 490, 495, n. 3 (8th Cir.2006) (noting that a closer time period between the initial illegality and the defendant's consent makes it more likely that the consent was the product of police misconduct).

As for the presence of intervening circumstances, we note that Sheila Stevens was not present when the initial search was conducted; she arrived after the officers had already searched, and she did not see them look in any of the buildings. Furthermore, Sheila expressed a desire to cooperate with the officers. Nothing indicates that the officers threatened her, arrested her, or threatened to arrest or charge her with any crimes. The record indicates that Sheila had sufficient time to consider her decision to sign the consent form and that she had time to confer with her husband prior to signing the form.

The third factor articulated in *Baltimore* also supports attenuation. The officers' initial conduct was not abusive or flagrantly inappropriate. While the officers should have obtained a search warrant for the Stevens' property, their conduct was not abusive or flagrantly inappropriate, as they arguably believed they were searching the open fields surrounding Stevens' home. Believing that the Kawasaki was in plain view, they thought they had a right to seize the evidence.

Stevens argues on appeal that this case is similar to *Commonwealth v. Elliott,* 714 S.W.2d 494 (Ky.App.1986). In *Elliott,* consent to search a residence was obtained from the defendant's sister soon after an improper search of part of the residence had already taken place. *Id.* at 495. This

Court upheld the suppression of evidence discovered both before and after consent was given, emphasizing that "[t]he unlawful activities cannot be justified by the belated actions of the police." *Id.* at 497. While the facts in the case at bar are similar, in that a third party and not the defendant, gave oral and written consent to search, we find the facts of the instant case distinguishable. Here, Sheila Stevens' consent was sufficiently removed from the initial violation in both time and circumstance. She was a third party who was not present for the initial search, and her consent was freely obtained hours later. Furthermore, the nature of the initial violation was not flagrant, abusive, or unconscionable. Taken together, these factors indicate that Sheila Stevens' consent was the product of her free will and was not obtained by improper exploitation of the initial illegality.

We agree with the Commonwealth that Sheila Stevens' consent to search was voluntary and was obtained after significant time had passed since the illegal search and seizure. Accordingly, the Honda need not be suppressed as fruit of the poisonous tree.

Therefore, we affirm the final judgment of the McCreary Circuit Court.

ALL CONCUR.