MODIFIED: SEPTEMBER 28, 2017
RENDERED: MARCH 23, 2017
TO BE PUBLISHED

## Supreme Court of Kentucky

2015-SC-000399-DG

FINAL

DATE 9/28/17 Kim Redmon, DC

JOSEPH PACE                                                        APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.        CASE NOS. 2014-CA-000501-MR AND 2014-CA-000621-MR
FAYETTE CIRCUIT COURT NO. 13-CR-00566-002

COMMONWEALTH OF KENTUCKY                                            APPELLEE

AND                              2015-SC-000400-DG

BRANDON COLLINS                                                    APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.        CASE NOS. 2014-CA-000501-MR AND 2014-CA-000621-MR
FAYETTE CIRCUIT COURT NO. 13-CR-00566-002

COMMONWEALTH OF KENTUCKY                                            APPELLEE

**OPINION OF THE COURT BY JUSTICE CUNNINGHAM**

**REVERSING, VACATING, AND REMANDING**

In this appeal, Joseph Pace and Brandon Collins (the "Appellants")

challenge the Court of Appeals' affirmance of the Fayette Circuit Court's denial

of their separate motions to suppress evidence.

On the evening of April 18, 2013, Sergeant Bryan Jared, of the Lexington Police Department, was surveilling an apartment building located on Augusta Drive in Lexington, Kentucky. Appellants' apartment was located within the Augusta Drive apartment building. Sergeant Bryan was monitoring the area due to a threat of retaliatory violence following a murder at a local bowling alley. The tip concerning the possible retaliation did not specify who would be the subject of the reprisal, nor did it specify when or where the violence would occur.

While observing the area, Sergeant Jared noticed a group of several individuals loitering by the Augusta Drive apartment building. Shortly thereafter, a black Dodge Charger pulled into a driveway adjacent to the left side of the apartment building. Two men and one woman exited the Charger and walked behind the left side of the apartment building. Thereafter, the loiterers made their way to the back right side of the apartment building. Sergeant Jared suspected that the three individuals and the loiterers were meeting around the back of the apartment building to brawl or conduct a drug transaction. Consequently, Sergeant Jared called for backup, exited his cruiser, and approached the three individuals on the driveway side of the apartment building. Sergeant Jared ultimately searched one of the men and found a gun and narcotics on his person. An ensuing search of the Charger uncovered another gun. Further investigation revealed that one of the Charger's occupants had been smoking marijuana. This individual stated that

2

he had smoked marijuana in Apartment 14. This particular apartment was Appellants' apartment.

Numerous officers responded to the scene and required the loiterers to move to the front of the apartment building. Officers asked the crowd who lived in Apartment 14, to which no one responded. One of the officers, Officer Donna Shepherd, proceeded to Appellants' apartment to conduct a "knock and talk." To no avail, Officer Shepherd entered the atrium of the apartment building and knocked on the front door of Appellants' first floor apartment. Officer Shepherd then exited the inside atrium and walked around the outside of the building to Appellants' back door. The back door was a sliding glass door, which was ajar, unobstructed, and located within a partially enclosed patio. The patio enclosure consisted of a brick wall standing approximately five feet and four inches tall.

As Officer Shepherd approached the back patio area, two other officers were already standing within the enclosure and looking through the sliding glass door. The officers notified Officer Shepherd that they could see baggies of marijuana sitting on an inside table. Officer Shepherd was unable to view the baggies of marijuana until she was standing within the patio enclosure.

Without a warrant or Appellants' consents, Officer Shepherd and the two officers entered Appellants' apartment through the sliding glass door and conducted a search. Concurrently, other officers entered the front door of the apartment and joined the search. It is unknown which officer ordered the entry and search. Officer Shepherd testified that she entered the apartment

3

because she was fearful someone may have been injured inside and in need of assistance. During the search, officers found three baggies of marijuana, eight marijuana plants, and other drug paraphernalia. Officers did not seize the evidence upon discovery.

Appellants were notified of the initial search and consented to a second search of their apartment. During this second search, officers seized the incriminating evidence, in addition to a newly discovered bag of cocaine in the amount of 4.3 grams. Appellants were immediately arrested and charged with one count each of cultivation of marijuana five or more plants, trafficking in a controlled substance within 1,000 feet of a school, possession of a controlled substance in the first degree, and possession of drug paraphernalia. Appellants filed separate motions to suppress all evidence seized under the Fourth Amendment to the United States Constitution and Section 10 of the Kentucky Constitution. In support of their motions, Appellants claimed that the officers violated the curtilage of their apartment when they entered the back patio enclosure, thereby having no legal authority to view the marijuana baggies. Appellants further argued that officers lacked any exigencies to enter the apartment and conduct the search. Due to these illegalities, the seizure of evidence was made unlawfully.

After a hearing at which Officer Shepherd and Sergeant Jared testified, the trial court made verbal findings of fact and conclusions of law and denied Appellants' motions to suppress. The trial court ruled that officers were entitled to be on the back patio as it was not within the apartment's curtilage.

The trial court further found that, although the precise justification for the officers' entrance was unknown, officers were permitted to conduct a search of the apartment pursuant to the plain view exception to the warrant requirement. Moreover, the trial court believed officers were permitted to enter the apartment and conduct a protective sweep of the area and check for injured individuals.

On March 24, 2015, Appellants entered conditional guilty pleas in the Fayette Circuit Court. Collins pled guilty to one count each of criminal facilitation-cultivation of marijuana five or more plants, possession of marijuana, and possession of drug paraphernalia. Pace pled guilty to one count of criminal facilitation-cultivation of marijuana five or more plants and one count of possession of marijuana. Appellants both received a sentence of twelve months' imprisonment, probated for a period of two years. Appellants' guilty pleas provided that they reserved the right to appeal the Fayette Circuit Court's denial of their motions to suppress. It is from that denial that Appellants appealed to the Court of Appeals.

The Court of Appeals affirmed the trial court's denial, but on different grounds. First, the Court of Appeals disagreed that a protective sweep was necessary since the search was not made incident to an arrest and there were no perceived threats to the officers. The Court of Appeals also explained that the "emergency aid" exception to the warrant requirement, not the protective sweep exception, was applicable to the officers' search. However, the Court of Appeals concluded that the emergency aid exception could not excuse the

5

warrantless search because officers did not have an objectively reasonable basis for believing the apartment's occupants required emergency aid. In regards to the plain view doctrine, the Court of Appeals opined that officers did not invade the curtilage of the apartment when viewing the marijuana baggies from the back porch. Even so, the Court of Appeals did not believe the plain view exception applied to the initial entry and search of the apartment because officers did not actually seize any incriminating evidence at that time. Ultimately, the Court of Appeals affirmed the trial court's order on the grounds that the seizure of evidence occurred during the second search which was conducted pursuant to Appellants' valid consents. Appellants appealed to this Court and we granted discretionary review.

Generally, when reviewing a trial court's ruling on a motion to suppress, this Court will examine the trial court's findings of fact to ensure they are supported by substantial evidence. *Peyton v. Commonwealth,* 253 S.W.3d 504, 514 (Ky. 2008) (citing *Adcock v. Commonwealth,* 967 S.W.2d 6, 8 (Ky. 1998)); RCr 9.78. However, the trial court's factual findings are not in dispute and appear to be sufficiently supported by the record. For that reason, the Court will proceed in conducting a *de novo* review *of the trial court's* legal conclusions. *Peyton,* 253 S.W.2d at 514-15.

Before conducting our review, we note that the trial court did not render a written order of its findings of fact and conclusions of law. As this Court explained in *Coleman v. Commonwealth,* "written findings greatly facilitate appellate review." 100 S.W.3d 745, 749 (Ky. 2002). It is important to

6

underscore that this Court's analysis would have been significantly aided by a submission of written findings. Fortunately, we can satisfactorily determine the basis for the trial court's ruling from the suppression hearing record. *Id.*

Our analysis begins with the Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment and Section 10 of the Kentucky Constitution. The Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A basic tenet of this area of the law is that warrantless searches are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (1967). In the absence of exigent circumstances, it is unreasonable for a law enforcement officer to enter a person's home without consent or a warrant. *Payton v. New York,* 445 U.S. 573, 590 (1980). Therefore, in order to analyze the legality of the officers' seizures in the case before us, the Court must first focus on the lawfulness of the initial search of Appellants' apartment.

## Exigencies

Due to both the trial court and Court of Appeals' holdings, the three following well-established exceptions to the warrant requirement are at issue: (1) the protective sweep exception fashioned in *Maryland v. Buie,* 494 U.S. 325 (1990); (2) the emergency aid exception articulated in *Brigham City v. Stuart,* 547 U.S. 398 (2006); and (3) the plain view exception delineated in *Coolidge v. New Hampshire,* 403 U.S. 443 (1971). These three exceptions provide that the

7

unreasonableness of a warrantless search can be overcome by "'the exigencies of the situation' [which may] make the needs of law enforcement so compelling that the warrantless search is objectively reasonable." *Mincey v. Arizona,* 437 U.S. 385, 393–394 (1978). We will address each exception in turn.

### *Protective Sweep*

According to our highest court, law enforcement officers are permitted to perform a protective sweep of a residence under two limited circumstances, both of which are preceded by an in-home arrest. *Buie,* 494 U.S. at 333-35; *see Guzman v. Commonwealth,* 375 S.W.3d 805, 808 (Ky. 2012). The first type of protective sweep provides that officers may "as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Kerr v. Commonwealth,* 400 S.W.3d 250, 266 (Ky. 2013) (quoting *Buie,* 494 U.S. at 334). The second type of protective sweep allows officers to perform a broader search of the premises if the officer has reasonable suspicion "that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* The exigency in these situations is the safety of the officers. *Guzman,* 375 S.W.3d at 807.

The trial court ruled that this exception permitted officers to enter Appellants' apartment in order to conduct a protective sweep of the premises. The trial court stated that "the officers had the potential to be in imminent danger," and were, therefore, entitled to conduct a "protective sweep" of the apartment. The Court of Appeals quickly disposed of this argument since there

8

were no arrests made, thereby negating the need for a protective sweep of the apartment.

Based on the factual context predicating the officers' entry into Appellants' apartment, we can find no identifiable basis for the performance of a protective sweep. The only arrests made prior to the officers' search of Appellants' apartment occurred outside the front of the apartment building. Moreover, those individuals were safely detained away from the apartment building when officers decided to enter Appellants' apartment. There were no other factors present which placed the safety of the officers or those on the arrest scene in danger. The protective sweep exception to the warrant requirement simply did not arise in this situation.

### Emergency Aid

Like the Court of Appeals, this Court also believes the more appropriate legal framework in which to analyze the reasonableness of the officers' search is under the emergency aid exception. This exception acknowledges the exigency created when an occupant of a residence is in need of emergency help. The exception allows law enforcement officers to "enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City*, 547 U.S. at 403 (citing *Mincey*, 437 U.S. at 392). In determining if this exception applies, we do not rely on the subjective intent of the officers, rather we must ask "whether there was 'an objectively reasonable basis for believing' that medical assistance was needed,

9

or persons were in danger." *Goben v. Commonwealth*, 503 S.W.3d 890, 913 (Ky. 2016) (quoting *Michigan v. Fisher*, 558 U.S. 45, 47 (2009)).

This Court just recently illustrated the permissive use of the emergency aid exception in *Goben*, 503 S.W.3d 890. In that case, officers responded to an alleged stabbing. *Id.* at 896. Once they arrived on the scene, officers found a man suffering from a stab wound in an apartment complex parking lot and a trail of blood leading up to the apartment complex's stairs. *Id.* At those stairs, a "debris trail" led to an open door of an apartment. *Id.* at 896-97. The officers entered the apartment believing that a previous struggle likely occurred and that someone may be injured inside. *Id.* In upholding the warrantless search, the Court found that a reasonably prudent officer would have concluded that someone was possibly injured inside the apartment and needed medical help. *Id.* at 897.

Unlike in *Goben*, officers who entered Appellants' apartment were not responding to any violence. Although there was loitering at the apartment building, and there was an individual who possessed a gun, there was no evidence of an altercation. *See Brigham City*, 547 U.S. at 401 (officers witnessed a physical fight through the window of the residence). Neither was there any indication that someone was injured within the apartment. *See Fisher*, 558 U.S. 46 (officers noticed blood on the hood of a truck parked outside the residence and the door to the residence). In fact, there were no noises or smells which would have led officers to believe that anyone was even present. *See Hughes v. Commonwealth*, 87 S.W.3d 850, 852-53 (Ky. 2002).

10

Officer Shepherd cited the retaliation threat and the individual who was arrested for harboring a gun as support for her belief that an injured person was present in the apartment. We do not believe a reasonably prudent officer would have invoked the emergency aid exception when faced with this minimal amount of evidence of an injury. Therefore, the officers' warrantless entry and search of Appellants' apartment cannot be justified by the emergency aid exception.

### *Plain View*

The plain view exception to the warrant requirement is justified by the exigent need to preserve evidence that may otherwise be moved or destroyed. *See Coolidge,* 403 U.S. at 446. The plain view exception applies "when the object *seized* is plainly visible, the officer is lawfully in a position to view the object, and the incriminating nature of the object is immediately apparent." *Kerr,* 400 S.W.3d at 266 (citing *Horton v. California,* 496 U.S. 128, 136–37 (1990)) (emphasis added). Unlike the exigencies outlined in the protective sweep and emergency aid exceptions, which are justified when conducting a warrantless search, the plain view doctrine only applies to the warrantless seizure of evidence. *Horton,* 496 U.S. at 135. This exception cannot justify an otherwise unlawful intrusion just because it may bring the officers within plain view of evidence. *Id.* Since this exception only excuses the seizure of evidence, not warrantless searches, we agree with the Court of Appeals that the trial court erred in finding that the plain view doctrine permitted the officers' warrantless entry and search of Appellants' apartment.

11

## **Open Fields**

Having concluded that the officers' initial warrantless search of Appellants' apartment was illegal, we must still determine the lawfulness of the officers' viewing of the marijuana baggies prior to the search. If officers viewed the marijuana baggies while conducting a search of the open fields surrounding the apartment, then officers were entitled to exploit that information in order to secure Appellants' consent to conduct the second search and ultimate seizure of evidence.

In order to determine if officers viewed the marijuana baggies from a lawful vantage point, we must first determine if Appellants' apartment patio is within the curtilage of the home. The curtilage of a home is an area outside the indoor parameters of a residence in which there is a reasonable expectation of privacy. *United States v. Dunn*, 480 U.S. 294, 300 (1987). The curtilage is basically an extension of the home and as such enjoys Fourth Amendment protection. *Id.*

There are four non-exclusive factors the Court may utilize in determining the parameters of a residence's curtilage. *Dunn*, 480 U.S. at 301. The four factors include "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] steps taken by the resident to protect the area from observation by people passing by." *Id.*

As applied to the trial court's factual findings, the *Dunn* factors demonstrate that Appellants' back patio was within the protected curtilage of

12

the home. In regards to the first factor, the patio was attached and immediately adjacent to the apartment. In fact, a sliding glass door was the only object separating the inside of the home to the patio. This Court has explained that areas this close in proximity, like a back yard, "may not always enjoy the protection of the curtilage, [but] it is a rare one that does not." *Quintana v. Commonwealth,* 276 S.W.3d 753, 760 (Ky. 2008) (citing *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 601 (6th Cir.1998)). As for the second factor, the patio was partially enclosed by a five foot, four inch tall brick wall. This wall provided Appellants' with privacy as illustrated by Officer Shepherd's testimony that the marijuana baggies were not viewable unless she was standing within the patio enclosure. This Court has previously found that individuals maintain an expectation of privacy in areas with far less enclosures or even none at all. *See, e.g., Quintana,* 276 S.W.3d at 760; *see also Commonwealth v. Ousley,* 393 S.W.3d 15 (Ky. 2013). With respect to the third factor, the nature of Appellants' patio use was not revealed during the suppression hearing. Even so, it is common knowledge that a back yard, porch, or patio is an area where private domestic activities extend. *Quintana,* 276 S.W.3d at 760.

Lastly, the fourth *Dunn* factor requires an inquiry into the steps Appellants have taken to protect the patio from public observation. The Court of Appeals and the trial court's analysis hinged on this factor. The lower courts concluded that the patio was not part of the apartment's curtilage because it was accessible via a public walkway and was not totally enclosed by a fence or

13

gate. We disagree. Nothing within our jurisprudence requires a homeowner to totally enclose an area in order to ensure curtilage protection. *See Ousley,* 393 S.W.3d at 27. As the Court reasoned in *Ousley,* to require full enclosures in order to extend ones curtilage is unreasonable since "[f]ew people, other than the very wealthy, barricade their front yard so completely that a person seeking to enter must request the unlocking of a solid gate that is higher than eye level." *Id.* (quoting *U.S. v. Redmon,* 138 F.3d 1109, 1130 (7th Cir. 1998) (Posner, J., dissenting)).

In light of the above-discussed *Dunn* factors, the Court concludes that Appellants' back patio enjoys curtilage protection. Thusly, officers could not have maintained a lawful vantage point when viewing the marijuana baggies unless done so by virtue of a warrant, an exception to the warrant requirement, or due to an extraneously valid reason. *Coolidge,* 403 U.S. at 467. As already discussed, the officers' presence on Appellants' patio was not in furtherance of a warrant, nor was it excused by any exigent circumstances. However, further analysis is required to determine if officers were lawfully on the property due to an extraneously valid reason, such as a "knock and talk".

## Knock and Talk

The trial court's factual findings demonstrate that Officer Shepherd approached the back patio in an attempt to conduct a second "knock and talk"

14

after the previous front door knock was unsuccessful.[1]  A "knock and talk" is an investigatory procedure whereby officers knock on the door of a structure in order to talk with an occupant.  *Quintana*, 276 S.W.3d at 756 (stating that the procedure may be utilized "for the purpose of obtaining information about a crime that has been committed, a pending investigation, or matters of public welfare.").

While the "knock and talk" procedure is a legitimate investigatory tool, it is not without limits.  Officers are still bound by the curtilage rule espoused in *Dunn*, 480 U.S. 294.  Nevertheless, a "knock and talk" conducted at "the main entrance to a home" does not violate the resident's otherwise protected curtilage because it "can be assumed that the resident consented" to the curtilage encroachment.  *Quintana*, 276 S.W.3d at 758.  In other words, law enforcement, like any other member of the public, have an implied license to knock on the front door of a residence in order to speak with its occupants.  *Id.* For that reason, the main entrance of a residence, including driveways and walkways thereto, is properly "invadable" curtilage, since it is an area that is open to the public.  *Id.* ("[T]he basic rule is that police with legitimate business may enter the areas of the curtilage which are impliedly open to use by the public.").

---

[1] The record is devoid of evidence or testimony which would explain the reasons the other two officers were already present on Appellants' patio when Officer Shepherd made her way to the back of the apartment.

In light of our case law, the Court concludes that Appellants' back sliding glass door is not located on "invadable" curtilage. This Court has previously explained that "[t]he back door of a home is not ordinarily understood to be publicly accessible. . . ." *Id.* at 759. As a result, "knock and talk" procedures are commonly violated when conducted at a back door that is not the main entryway. *See Milam v. Commonwealth,* 483 S.W.3d 347, 352 (Ky. 2015). Indeed, we doubt that a member of the public, whether it be "Girl Scouts, pollsters, mail carriers, [or] door-to-door salesmen," would assume it appropriate to enter Appellants' back patio enclosure and knock on the sliding glass door. *Ousley,* 393 S.W.3d at 30. Accordingly, we cannot surmise that Officer Shepherd conducting a valid "knock and talk" when she encroached upon Appellants' back patio. Therefore, we find that officers were unlawfully located on Appellants' patio when they viewed the marijuana baggies.

## Exclusion

In light of our holdings that officers breached the curtilage of Appellants' apartment when viewing the marijuana baggies, in addition to conducting an illegal search of Appellants' apartment, we are now faced with whether the evidence seized should be excluded as fruit of the poisonous tree. The exclusionary rule declares that evidence obtained directly or indirectly through an illegal search is not admissible against an accused. *Wilson v. Commonwealth,* 37 S.W.3d 745, 748 (Ky. 2001) ("[E]vidence cannot be admitted against an accused if the evidence is derivative of the original illegality . . . .").

16

The Commonwealth urges the Court to find that the taint of the officers' illegal search was purged by Appellants' subsequent consents to search. *See Hedgepath v. Commonwealth*, 441 S.W.3d 119, 125 (Ky. 2014). Although the trial court did not issue factual and legal findings regarding consent, and the Commonwealth did not preserve this issue at the trial court, this Court has held that the judgment of a lower court can be affirmed for any reason supported by the record. *See Ky. Farm Bureau Mut. Ins. Co. v. Shelter Mut. Ins. Co.*, 326 S.W.3d 803, 805 n. 3 (Ky. 2010) (noting that a court may affirm for any reason appearing in the record). Here, the Court of Appeals addressed the issue of consent; therefore, we cannot say procedurally that the issue was unpreserved and will address it accordingly.

"Even if a consent later followed, when an individual consents to a search after an illegal entry is made, consent is not valid and suppression is required of any items seized during the search ..., unless the taint of the initial entry has been dissipated before the consents to search were given." *U.S. v. Hardin*, 539 F.3d 404, 424 (6th Cir. 2008) (internal quotations and citations omitted). "The Commonwealth bears the burden of demonstrating that consent was freely obtained." *Milam v. Commonwealth*, 483 S.W.3d 347, 352 (Ky. 2015).

As the Court of Appeals stated in *Stevens v. Commonwealth*, 354 S.W.3d 586, 591 (Ky. App. 2011), and as we later acknowledged in *Milam*, 483 S.W.3d at 352,

17

> a subsequent consent to search may dissipate
> the taint of a prior illegality. . . . The admissibility of
> the challenged evidence involves a two-part test: (1)
> whether the consent was voluntary and (2) whether
> the consent was an independent act of free will.
>
> . . .
>
> Looking at the second inquiry, [f]actors relevant
> to whether consent was an independent act of free will
> include: (1) the temporal proximity of the illegal
> conduct and the consent; (2) the presence of
> intervening circumstances; and (3) the purpose and
> flagrancy of the initial misconduct.

*Stevens*, 354 S.W.3d at 591 (internal quotations and citations omitted) (holding

that a defendant's wife's consent to search was voluntary and attenuated

enough to remove the taint of the officers' improper search of a Kawasaki on

the defendant's property).

Applying these factors to the instant case, Appellants arrived home to

find that the police officers had already searched their apartment and found

contraband, at which point the officers then asked for written consent. Unlike

in *Stevens*, only mere minutes passed between the officers' initial illegal search

and Appellants' consent. A "substantial period of time supports attenuation

more than consent obtained in close proximity to the initial violation." *Id.*

(citing *U.S. v. Simpson*, 439 F.3d 490, 495, n. 3 (8th Cir. 2006) (noting that a

closer time period between the initial illegality and the defendant's consent

makes it more likely that the consent was the product of police misconduct)).

Second, no intervening circumstances occurred between the illegal search and

the officers' use of the contraband, although unseized, as leverage to obtain

consent. We cannot assume that Appellants would have given consent if the

18

officers had not informed them of the initial search. Third, the officers' entry into and search of the apartment was flagrantly inappropriate.

Thus, Appellants' consent was not an act of free will sufficient to dissipate the taint of the initial illegal search. "The evidence discovered as a result of the detectives' unlawful entry must be suppressed." *Milam*, 483 S.W.3d at 352 (citing *Wong Sun v. U.S.*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). Since the first search was improper, and the consent was not attenuated enough in time or proximity to cure the illegality, the evidence seized during the second search must be excluded as fruit of the poisonous tree.

## Conclusion

For the aforementioned reasons, we reverse the opinion of the Court of Appeals, vacate the Fayette Circuit Court's order denying Appellants' motion for suppression, and remand this case back to the trial court for further proceedings consistent with this opinion.

All sitting. All concur.


COUNSEL FOR APPELLANT, JOSEPH PACE:

Steven Jared Buck
Assistant Public Advocate


COUNSEL FOR APPELLANT, BRANDON COLLINS:

Linda Roberts Horsman
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

James Daryl Havey
Assistant Attorney General

# Supreme Court of Kentucky

## 2015-SC-000399-DG

JOSEPH PACE        APPELLANT

ON APPEAL FROM FAYETTE CIRCUIT COURT
V.      HONORABLE JAMES D. ISHMAEL, JUDGE
NO. 13-CR-00566-002

COMMONWEALTH OF KENTUCKY       APPELLEE

AND        2015-SC-000400-DG

BRANDON COLLINS        APPELLANT

ON APPEAL FROM FAYETTE CIRCUIT COURT
V.      HONORABLE JAMES D. ISHMAEL, JUDGE
NO. 13-CR-00566-002

COMMONWEALTH OF KENTUCKY       APPELLEE

## ORDER DENYING PETITION FOR REHEARING AND GRANTING MODIFICATION

This matter is before the Court on the Commonwealth's Petition for Rehearing on the Opinion of the Court by Justice Cunningham, rendered March 23, 2017. The Court having reviewed the record and being otherwise fully and sufficiently advised, ORDERS:

1) The Commonwealth's Petition for Rehearing on the Opinion of the Court rendered March 23, 2017 is DENIED; and

2) On the Court's own Motion, the Opinion is MODIFIED on its face by substitution of the attached opinion in lieu of the original opinion rendered

March 23, 2017. Said modification occurs on pages 17-19 and does not affect the holding.

All sitting. All concur.

ENTERED: September 28, 2017.

_____
CHIEF JUSTICE

9