RENDERED: MAY 16, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0289-MR

CHRISTOPHER TODD BESSINGER          APPELLANT

v.          APPEAL FROM WARREN CIRCUIT COURT
HONORABLE JOHN R. GRISE, JUDGE
ACTION NO. 22-CR-01161-001

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, CETRULO, AND TAYLOR, JUDGES.

CETRULO, JUDGE: Appellant, Christopher Todd Bessinger ("Bessinger"), appeals a judgment of the Warren Circuit Court sentencing him to five years of imprisonment for trafficking in marijuana. On appeal, he challenges the court's denial of his motion to suppress evidence, as reserved through his conditional plea. Finding no error, we affirm.

# BACKGROUND

On the evening of June 13, 2022, the Warren County Sheriff's office received a citizen's "drug complaint" regarding suspicious behavior at Bessinger's residence. Deputy Sheriff Nick Jewell ("Deputy Jewell") responded and spoke with Bessinger at the bottom of his driveway close to the street. At that time, there were two vehicles parked in the driveway pointing towards the garage and parked close (a few feet) to that garage. Bessinger's vehicle was unoccupied; Johnathan Payne ("Payne") owned the other vehicle, and he was inside it with another person.

During the course of their conversation, Deputy Jewell asked Bessinger if he could approach Payne's vehicle and speak to Payne and his passenger. Bessinger consented, and Deputy Jewell approached Payne's vehicle. While speaking with Payne and his occupant, Deputy Jewell detected the odor of marijuana emanating from inside Payne's car. Deputy Jewell then asked the occupants to exit the vehicle, searched the vehicle, and found a bag of marijuana underneath the passenger seat. Payne was arrested for marijuana possession.

Then, just after 10:00 p.m. in the evening, the deputy used his flashlight to look through Bessinger's tinted vehicle windows. The deputy saw numerous vacuum-sealed bags inside Bessinger's vehicle and later testified that he believed those bags contained marijuana because "some" of the bags matched the bag of marijuana confiscated from Payne's vehicle. Deputy Jewell entered the

-2-

vehicle and discovered marijuana in the vacuum-sealed bags. Bessinger was arrested and indicted for trafficking in marijuana, five pounds or more, in violation of Kentucky Revised Statute ("KRS") 218A.1421. Bessinger pled not guilty and filed a motion to suppress the marijuana evidence.

In July 2023, the Warren Circuit Court held a hearing on his motion. The only testifying witness, Deputy Jewell, stated that he did not believe he needed consent to search Bessinger's vehicle (and neither sought nor obtained a search warrant for it) because he was on the driveway with Bessinger's consent, and the evidence confiscated from Bessinger's vehicle was in plain view. After the hearing, the trial court denied Bessinger's motion. Consequently, Bessinger entered an *Alford* plea (a conditional guilty plea under *North Carolina v. Alford*, 400 U.S. 25 (1970)) and preserved his right to appeal the denial of his motion to suppress. The court sentenced him to five years of imprisonment for trafficking in marijuana. Bessinger appealed.

## ANALYSIS

Appellate analysis of a motion to suppress requires a bifurcated standard of review. *Pitcock v. Commonwealth*, 295 S.W.3d 130, 132 (Ky. App. 2009). "When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law." *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky.

-3-

2006) (citing *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004)).  Clear error only exists if the record lacks substantial evidence to support the trial court's findings.  *Elsea v. Day*, 448 S.W.3d 259, 263 (Ky. App. 2014) (citing *M.P.S. v. Cabinet for Hum. Res.*, 979 S.W.2d 114, 116 (Ky. App. 1998)).  On appeal, Bessinger challenges only the trial court's legal conclusion that the warrantless search of his vehicle was not unconstitutional.

The Fourth Amendment of the United States Constitution (applicable to the states through the Fourteenth Amendment) and Section 10 of the Kentucky Constitution provide safeguards against unreasonable searches and seizures.[1]  Under both the Fourth Amendment and Section 10, a warrantless search "inside a home [is] presumptively unreasonable."[2]  *Morgan v. Fairfield Cnty., Ohio*, 903 F.3d 553, 560-61 (6th Cir. 2018) (citation omitted); *Simpson v. Commonwealth*,

---

[1] The Fourth Amendment to the United States Constitution states:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Similarly, Section 10 of the Kentucky Constitution provides that "[t]he people shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure; and no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[2] Since 1996, Kentucky courts have stated "Section 10 of the Kentucky Constitution provides no greater protection than does the federal Fourth Amendment."  *See LaFollette v. Commonwealth*, 915 S.W.2d 747, 748 (Ky. 1996) (citation omitted).  However, this belief that Kentucky's Constitution could provide no greater protection than the Fourth Amendment was called into question in 2022.  *See Commonwealth v. Reed*, 647 S.W.3d 237, 254-58 (Ky. 2022) (Minton, C.J., concurring).

474 S.W.3d 544, 548 (Ky. 2015) (citation omitted). This protection extends to a home's curtilage. *Quintana v. Commonwealth*, 276 S.W.3d 753, 757 (Ky. 2008).

A home's protected curtilage is the "area outside the indoor parameters of a residence in which there is a reasonable expectation of privacy." *Pace v. Commonwealth*, 529 S.W.3d 747, 756 (Ky. 2017) (citing *United States v. Dunn*, 480 U.S. 294, 300 (1987)). Basically, "[t]he curtilage is [] an extension of the home and as such enjoys Fourth Amendment protection." *Id.* However, certain areas (such as a driveway) may not be considered curtilage if – given the specifics of the location – the area does not carry a reasonable expectation of privacy because it is open to plain view and properly approachable by the public. *Quintana*, 276 S.W.3d at 758.

In *United States v. Dunn*, *supra*, the United States Supreme Court established four analytical, non-exclusive factors to consider when assessing curtilage: the proximity of the area to the home; whether the area is included in an enclosure with the home; how the area is used; and the steps the resident has taken to prevent observation from the people passing by. *Pace*, 529 S.W.3d at 756 (citing *Dunn*, 480 U.S. at 301). These factors are not to be "mechanically applied" but rather, they are useful when analyzing "whether the area in question is so intimately tied to the home itself that it should be placed under the home's

umbrella of Fourth Amendment protection." *Commonwealth v. Dixon*, 482 S.W.3d 386, 392 (Ky. 2016) (quoting *Dunn*, 480 U.S. at 301).

Bessinger argues that similar to the motorcycle in *Collins v. Virginia*, 584 U.S. 586 (2018), vehicles parked on the top of a private driveway should be considered part of the home's protected curtilage and safe from warrantless searches. However, the facts before us are quite distinct from *Collins*.

In *Collins*, police witnessed the driver of an orange and black motorcycle commit traffic infractions on two occasions. Both times, the driver successfully eluded police. *Id.* at 589. After an investigation, the police learned that the motorcycle was likely stolen and in the possession of Ryan Collins. *Id.* Police discovered photographs on Collins' facebook profile that featured the motorcycle parked at the top of a driveway. *Id.* Police located the driveway from the photographs, parked on the street, and saw what appeared to be a motorcycle covered with a tarp parked similarly to the photographs. *Id.* The officer then, without a warrant, approached the motorcycle, pulled off the tarp, and matched the license plate and vehicle identification numbers to the stolen motorcycle. *Id.* at 589-90. Upon Collins' arrival, police arrested him, and a grand jury later indicted him for receiving stolen property. *Id.* at 590.

Collins moved to suppress the evidence that the police obtained as a result of the warrantless search, but the trial court denied the motion and Collins

was convicted. *Id.* The Court of Appeals of Virginia and the Supreme Court of Virginia both affirmed and agreed that the warrantless search was justified. *Id.* However, the United States Supreme Court disagreed and reversed. *Id.* at 591.

In *Collins*, the Supreme Court noted while a vehicle[3] does not always have the exact same protections as a home, the curtilage surrounding a home is strictly protected from government intrusion. *Id.* at 592-93 (citations omitted). "When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred[,] . . . [and s]uch conduct [] is presumptively unreasonable absent a warrant." *Id.* at 593 (citing *Florida v. Jardines*, 569 U.S. 1, 11 (2013)).

Ultimately, the *Collins* Court, in part, determined that the motorcycle *was* within the home's curtilage due to *the specifics of its location*. *Id.* at 593-94. The motorcycle was parked on a part of the driveway that runs "alongside the front lawn and up a few yards past the front perimeter of the house." *Id.* at 593. Importantly, where it was parked, the motorcycle was enclosed (on two sides by a

---

[3] This statement was built upon the "automobile exception" to the Fourth Amendment of the United States Constitution. In 1925, the United States Supreme Court created the "automobile exception" and upheld a warrantless search of a vehicle – despite Fourth Amendment protections – because, unlike a store, home, or other structure, an automobile "can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Collins*, 584 U.S. at 591 (quoting *Carroll v. United States*, 267 U.S. 132 (1925)). As such, the Court first created this "ready mobility" exception to the warrant requirement of the Fourth Amendment. *Id.* This automobile exception has evolved in the decades following *Carroll*, but as it is not argued here, further discussion of the exception is not necessary.

brick wall and a third side by the house) and *not* on the pathway to the front door. *Id.* In fact, a visitor venturing to the front door "would turn off before entering the enclosure" where the motorcycle was located. *Id.* Such a location maintains a reasonable expectation of privacy and receives the same protections as the home itself. *See id.* It is this kind of fact-specificity that determines where/if curtilage extends. *See Dunn*, 480 U.S. at 301.

Here, Bessinger's vehicle was parked close to the garage door, but that proximity alone is not enough to determine the vehicle was within the curtilage of the home. The property descriptions in the record are limited, but Bessinger's vehicle was parked at the front of the residence (not along a side or back) and within the area the public could enter when approaching the front door. The vehicle was not behind a gate, around the back of the home, enclosed in any way, covered or shielded from passersby, nor did the home have signs denying access to the area. While the Commonwealth bears the burden of establishing the constitutional validity of a warrantless search, it was Bessinger's burden to show his vehicle was within the curtilage. *See Commonwealth v. Lane*, 553 S.W.3d 203, 206 (Ky. 2018) (citation omitted); *see also United States v. Coleman*, 923 F.3d 450, 455 (6th Cir. 2019) (citation omitted). Bessinger did not meet his burden. Based on the facts before us, Bessinger did not have the same reasonable expectation of privacy in his vehicle as the appellant in *Collins* had in his

motorcycle because Bessinger's vehicle was not within the home's protected curtilage. *See Collins*, 584 U.S. at 592-94.

Beyond the mere physical location, *Collins* is also distinguishable by consent. In *Collins*, the police officer entered the property without consent. *See generally id.* Here, Deputy Jewell came to Bessinger's home after a citizen complaint and police dispatch to his residence. The deputy was on the driveway with Bessinger's permission, and Bessinger consented to Deputy Jewell approaching Payne's vehicle, a car parked immediately beside Bessinger's vehicle. Again, these circumstances negate Bessinger's expectation of privacy for his vehicle at that time.

Next, the seized evidence – the bags containing marijuana – was in plain view, one of the exceptions to the warrant requirement. *See Pace*, 529 S.W.3d at 753 (citation omitted). "The plain-view exception to the warrant requirement applies when the object seized is plainly visible, the officer is lawfully in a position to view the object, and the incriminating nature of the object is immediately apparent."[4] *Kerr v. Commonwealth*, 400 S.W.3d 250, 266 (Ky. 2013) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)).

---

[4] While Bessinger recites this rule, he does not challenge any specific element; he merely argues that "there is not a scintilla of evidence [Deputy] Jewell had a 'right of access to the [bags].'"

-9-

Here, the deputy was lawfully in a position to observe the bags:  he was responding to a police dispatch, on the driveway with permission, and not standing on or searching within the home's curtilage.  The bags were plainly visible by the deputy, albeit with the use of his flashlight.  Yet, the use of a flashlight does not negate the "plainly visible" element.  *See, e.g.*, *Texas v. Brown*, 460 U.S. 730, 739-40 (1983) (holding evidence was found in plain view even though the officer used a flashlight to look inside the interior of a vehicle).  Finally, these specific bags were obviously incriminating because some of them matched the bag of marijuana just discovered under the passenger seat of Payne's car.  Hence, the deputy did not violate Bessinger's constitutional search and seizure protections.

## CONCLUSION

Finding no error in the denial of the motion to suppress, the judgment and sentence of the Warren Circuit Court is AFFIRMED.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Dennie Hardin<br>Bowling Green, Kentucky | Russell Coleman<br>Attorney General of Kentucky |
| | Christopher Henry<br>Assistant Solicitor General<br>Frankfort, Kentucky |