RENDERED: MARCH 17, 2016
TO BE PUBLISHED

$\mathfrak{Supreme\ Court\ of\ Kentucky}$

2014-SC-000339-DG

DATE June 16, 16 ß\iA Grounds

ANTHONY MALONEY                                          APPELLANT

V.
ON REVIEW FROM COURT OF APPEALS
CASE NO. 2013-CA-000213-MR
MONTGOMERY CIRCUIT COURT NO. 12-CR-00168

COMMONWEALTH OF KENTUCKY                                  APPELLEE

**OPINION OF THE COURT BY JUSTICE VENTERS**

**REVERSING AND REMANDING**

After the Montgomery Circuit Court denied his motion to suppress evidence, Appellant Anthony Maloney entered a conditional guilty plea to being a convicted felon in possession of a firearm, carrying a concealed deadly weapon, and alcohol intoxication in a public place. He was sentenced to five years' imprisonment. The motion to suppress evidence was based upon the argument that Appellant's initial arrest for alcohol intoxication was improper and, therefore, the evidence obtained during the search incident to his arrest must be suppressed as the tainted fruit of an improper arrest. After entering the conditional plea, Maloney appealed. The Court of Appeals upheld the validity of the arrest and affirmed his conviction. We granted discretionary review to consider the validity of the arrest and the evidence thus obtained. Upon review, we reverse the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

The Mount Sterling Police Department received a report from an identified caller that an intoxicated person was staggering in traffic on a city street. The caller described the subject as a white male wearing a blue t-shirt and green shorts. Officer Vernon Rogers went to the area to investigate, and near the location reported by the caller, he saw Appellant lying in a state of complete repose on the front porch of his residence. Appellant's torso was partially concealed by the porch railing, but his legs were visibly extended toward the front steps. His clothing matched the description given by the caller. Officer Rogers went onto the front porch, and after awakening Appellant, he detected the odor of alcohol on his breath. Rogers then arrested Appellant for alcohol intoxication in a public place pursuant to KRS 222.202(1). During the routine search incident to the arrest, Appellant, a convicted felon, admitted that he had an unloaded handgun in his pocket.

A Montgomery County grand jury indicted Appellant for being a convicted felon in possession of a handgun, carrying a concealed deadly weapon, and alcohol intoxication in a public place, third or greater offense. Appellant then moved to suppress the weapon seized at his arrest. In support of the motion, he argued that Officer Rogers lacked sufficient cause to arrest Appellant for alcohol intoxication and that the search of Appellant's person incident to the unauthorized arrest violated his Fourth Amendment protections. Consequently, Appellant asserted that any incriminating items or statements derived from the improper arrest were inadmissible. The trial court

2

denied the motion. Appellant then entered a conditional guilty plea reserving the right to appeal the circuit court's denial of his motion to suppress.

At the Court of Appeals, Appellant reiterated his argument that the arrest was unlawful because at the time of arrest he was not committing a violation of KRS 222.202(1) in the presence of Officer Rogers. He also argued in the Court of Appeals that Officer Rogers' entry onto the porch violated his Fourth Amendment rights as enunciated by the United States Supreme Court in *Florida v. Jardines,* 133 S. Ct. 1409 (2013). The Court of Appeals affirmed the trial court's ruling. We granted discretionary review to consider the validity of Appellant's arrest.

## ANALYSIS

Our standard for appellate review of rulings on pretrial motions to suppress evidence remains unchanged despite the recent repeal of RCr 9.78 and its reformulation under RCr 8.27. *Simpson v. Commonwealth,* 474 S.W.3d 544, 546-47 (Ky. 2015). We apply the same two-step process adopted in *Adcock v. Commonwealth,* 967 S.W.2d 6, 8 (Ky. 1998). First, we review the trial court's findings of fact, which are deemed to be conclusive, if they are supported by substantial evidence. Next, we review *de novo* the trial court's application of the law to the facts to determine whether its decision is correct as a matter of law. In this instance, the applicable facts are not disputed, and so our task is limited to a *de novo* review to determine whether the law governing arrests and searches incident to arrests was correctly applied.

3

## I. APPELLANT'S WARRANTLESS ARREST FOR ALCOHOL INTOXICATION IN A PUBLIC PLACE WAS IMPROPER BECAUSE THE OFFENSE WAS NOT COMMITTED IN THE PRESENCE OF THE ARRESTING OFFICER.

With limited exceptions not applicable here, KRS 431.005(a)-(d) sets forth the four circumstances in which a police officer is authorized to make an arrest. Those circumstances are:

(a) In obedience to a warrant; or
(b) Without a warrant when a felony is committed in his or her presence; or
(c) Without a warrant when he or she has probable cause to believe that the person being arrested has committed a felony; or
(d) Without a warrant when a misdemeanor, as defined in KRS 431.060, has been committed in his or her presence [.]

Officer Rogers did not arrest Maloney "[i]n obedience to a warrant," so subsection (a) is not applicable here. The Court of Appeals concluded that Rogers was authorized to make the arrest because the information relayed to him from the 911 caller, corroborated by his own personal observation of Appellant lying on the porch, provided ample probable cause to believe that Appellant was guilty of alcohol intoxication under KRS 222.202(1). Citing *Faught v. Commonwealth*, 656 S.W.2d 740, 741 (Ky. 1983), and *Williams v. Commonwealth*, 147 S.W.3d 1 (Ky. 2004), the Court of Appeals correctly recognized that probable cause for an arrest may be accumulated, not only from the officer's personal observations, but also from a corroborated tip of a known, reliable informant.

The problem with applying the *Fraught/Williams* analysis to this case is that alcohol intoxication in a public place under KRS 222.202(1) is a misdemeanor, not a felony. Under KRS 431.005(d), a warrantless arrest for a

4

misdemeanor is authorized only if the crime was committed in the officer's presence. Having probable cause to believe the offense was committed outside the officer's presence does not justify a warrantless arrest for a misdemeanor. Therefore, we must look closer at the circumstances of the actual arrest to determine if Appellant's conduct in the officer's presence constituted the offense of alcohol intoxication in a public place.

The relevant portion of KRS 222.202 defines the offense as follows: "A person is guilty of alcohol intoxication when he appears in a public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity." Appellant makes two arguments in opposition to the Commonwealth's theory that his behavior in the presence of Officer Rogers amounted to alcohol intoxication under KRS 222.202(1).

First, he contends that his activity at the time of arrest did not manifest a state of intoxication "to the degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity" as required by the statute. Second, he contends that the front porch on which he was seen was not "a public place" within the purview of KRS 222.202(1).

At the suppression hearing, Officer Rogers testified that he first observed Appellant "passed out" on the front porch of a residence.[1] Appellant prefers to describe his conduct as being "asleep" on the front porch. We understand the

---

[1] The residence belonged to a relative with whom Appellant was staying.

different perceptions generated by the different terms, but the difference is immaterial to our analysis. Regardless of the cause of his slumber, KRS 222.202(1) requires conduct manifesting such a degree of intoxication that "he may endanger himself, or other persons, or property," or that he may "unreasonably annoy persons in his vicinity."

Appellant's only activity in the presence of Officer Rogers would more aptly be described as *inactivity*: lying flat on the floor of his front porch in a state of total repose. It is difficult to conceive of any behavior less likely to become a danger to persons or property, or less likely to unreasonably annoy others, than lying silent and motionless on one's front porch. Arguably, lying down at home and "sleeping it off" is the most socially responsible thing a drunk person could be doing.

In *Commonwealth v. Mobley* we clarified that the applicable standard for a misdemeanor arrest is "whether a reasonable officer could conclude from all facts that a misdemeanor is being committed in his presence." 160 S.W.3d 783, 787 (Ky. 2005). Alcohol intoxication under KRS 222.202(1) requires much more than simply "being" drunk. It requires some behavior that "manifests," meaning "exhibits" or "demonstrates," alcohol intoxication "to the degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity." Appellant's pre-arrest conduct in Officer Rogers' presence had no propensity at all to endanger or unreasonably annoy anyone.

The Commonwealth points out that Appellant was "lying on the porch itself, not in a chair," and that he "was not coherent and he did not want to

6

wake up" when Officer Rogers placed him under arrest. To the extent they matter at all, those factors suggest even more convincingly that Appellant was doing nothing that may pose a danger to himself or others. The Commonwealth speculates that Appellant could have awakened at some later time and then "staggered back out into traffic," thus later engaging in conduct that may be endangering or unreasonably annoying. We recognize from the plain language of KRS 222.202(1) and from the word "may" in the phrase "may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity," that guilt under the statute does not require conduct creating an immediate or actual endangerment or unreasonable annoyance. However, the statute does require some manifest behavior that is likely to produce the requisite endangerment or annoyance. Being passed out, asleep, or otherwise unconscious on a porch does not satisfy that requirement of the statute.[2]

Moreover, under the Commonwealth's rationale, anyone and everyone who remained alive after consuming an alcoholic beverage would be subject to arrest for "alcohol intoxication" because anyone "may" at a later time change his current behavior and commence behaving in a way that presents a danger to himself or others or becomes unreasonably annoying. To infuse this statute with so broad a construction that it criminalizes virtually any activity or inactivity preceded by alcohol consumption implicates the constitutional prohibitions of vagueness and overbreadth. *See Coates v. City of Cincinnati,*

---

[2] Certainly being unconscious can be a symptom of a life-endangering condition but it is not in the ordinary sense the cause of endangerment.

7

402 U.S. 611, 614 (1971)(City ordinance prohibiting "conduct . . . annoying to person passing by" held unconstitutionally vague because it applies an unascertainable standard and over-broad because it authorizes the punishment of constitutionally protected conduct.)

The legislative history of the crime of public intoxication confirms our belief that the General Assembly did not intend to criminalize the act of being passed out , or asleep, on the porch. In 1974, the General Assembly enacted KRS 525.100, which then prohibited "public intoxication" induced by either alcohol or drugs.[3] KRS 525.100 employed precisely the same standard for defining the punishable range of intoxication that was, in 1986, incorporated into KRS 222.202(1): "manifestly under the influence of alcohol . . . to the degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity." Commentary published by the Kentucky Crime Commission/Legislative Research Commission concurrently with the 1974 enactment of KRS 525.100 explains that the standard set forth in the new statute *"is intended to require some aberrant behavior on the part of the accused before an arrest is authorized."* (Emphasis added.) The legislature's use of this familiar terminology when it enacted KRS 222.202(1) strongly indicates that the interpretation applicable to the earlier statute was also intended to be applied to the latter statute. The manifestation of guilt

---

[3] KRS 525.100 was subsequently amended to exclude intoxication due solely to alcohol consumption. Alcohol intoxication is now addressed exclusively under KRS 222.202.

under both statutes requires "some aberrant behavior on the part of the accused before an arrest is authorized."

Appellant exhibited no "aberrant behavior" in the presence of Officer Rogers that could be reasonably construed as creating a risk that "he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity." The offense of alcohol intoxication under KRS 222.202(1) was not committed in the presence of the officer. Since alcohol intoxication under KRS 222.202(1) is a misdemeanor, pursuant to KRS 431.005, the officer's only avenue for making a proper arrest was to obtain an arrest warrant based upon probable cause to believe that Appellant's earlier behavior satisfied the elements of KRS 222.202(1).

Consequently, the officer had no authority to arrest Appellant, and the search incident to the arrest was not valid. The evidence thus obtained should have been suppressed.

## II. APPELLANT'S FRONT PORCH WAS OPEN FOR PUBLIC ACCESS AND OFFICER ROGERS' ENTRY ONTO THE PORCH WAS NOT IMPROPER.

Appellant also challenges the validity of his arrest with two arguments based upon his assertion that his front porch is not "a public place." First, he points out that KRS 222.202(1) applies only to conduct that occurs in "a public place." He argues that his front porch is not a public place, and therefore, his behavior on the porch could not qualify for prosecution under KRS 222.202(1). Second, he contends that because his front porch was within his constitutionally protected sphere of privacy, the officer's intrusion onto the

porch was not authorized, and in effect, amounted to an unconstitutional search.

We need not address the first aspect of Appellant's "public place" argument. As explained above, he could not be guilty of violating KRS 222.202(1) at the time of arrest because his conduct could not as a matter of law reasonably be regarded as a danger to himself or others, nor could it be regarded as unreasonably annoying to persons in the vicinity. The second aspect of Appellant's argument deserves our attention because it has implications beyond the scope of KRS 222.202(1).

In support of this argument, Appellant relies on the definition of public place contained in KRS 525.010(3)[4] and *Florida v. Jardines*, 133 S. Ct. 1409 (2013). KRS 525.010(3) provides a definition of a "public place" but that definition is not exhaustive, and while this Court has not explicitly stated whether a porch would be considered a public place, our previous decisions make it clear that Appellant's porch was open at least to limited access by the general public, which would include inquisitive police officers.

We have previously held that an individual standing in the doorway of his or her home has no reasonable expectation of privacy. *Talbott v. Commonwealth*, 968 S.W.2d 76, 81 (Ky. 1998). Further, since the main

---

[4] "Public place" means a place to which the public or a substantial group of persons has access and includes but is not limited to highways, transportation facilities, schools, places of amusements, parks, places of business, playgrounds, and hallways, lobbies, and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence. An act is deemed to occur in a public place if it produces its offensive or proscribed consequences in a public place.

10

entrance to the home is widely perceived as the home's point of access for business, the public is permitted to go up to a home's front door, if the way is not barred. *Quintana v. Commonwealth*, 276 S.W.3d 753, 758 (Ky. 2008). Areas outside the home, such as the front door, driveways, or walkways, "do not carry a reasonable expectation of privacy because they are open to plain view and are properly approachable by any member of the public, unless obvious steps are taken to bar the public from the door." *Id.*

For his argument that his porch is constitutionally-protected space, Appellant primarily relies on *Jardines*, 133 S. Ct. 1409. However, his reliance is misplaced because *Jardines* involved the distinguishable situation in which police used a drug-sniffing dog to search the subject's porch and doorway for information about what may be inside the home. *Id.* at 1413. The Supreme Court's decision limiting the ability of police to use a drug-sniffing dog outside a residence did not alter the general license of the police, or of the public at large, to approach the front of a residence and knock on the door. *Id.* at 1415-16. Indeed, the Supreme Court explicitly acknowledged the license or invitation to the public to approach a home and knock on the front door.

> This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave. Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters. Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is "no more than any private citizen might do." *Kentucky v. King*, 563 U.S. —, —, 131 S. Ct. 1849, 1862, 179 L. Ed.2d 865 (2011).

11

*Id.* (footnote omitted). By stepping onto the porch to observe Appellant, Officer Rogers did nothing more than any private citizen could do.

We note that the porch in this case abutted the front door of the residence and was open to public access. The porch simply had a railing, not a gate, nor any other restriction to indicate that the space was an exclusively private area, unavailable to members of the public seeking to approach the residence for a legitimate purpose. The porch was thus open to Officer Rogers as it was to any member of the general public. Appellant's alleged condition just before he took to his porch, and his appearance as he lay unconscious on the porch, provided anyone, including Officer Rogers, with a legitimate purpose to go onto the porch. Appellant's Fourth Amendment and Kentucky Constitution Section 10 arguments are unpersuasive.

## CONCLUSION

For the reason stated above, we conclude that Appellant's arrest for alcohol intoxication in a public place was unlawful. Therefore, the search conducted incident to that arrest was unauthorized, and the evidence thus obtained was improper and should have been suppressed. Therefore, we reverse the opinion of the Court of Appeals. The judgment entered pursuant to the conditional plea agreement is hereby vacated. This matter is remanded to the Montgomery Circuit Court for further proceedings consistent with this opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

John Gerhart Landon
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear, Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Office of the Attorney General