RENDERED: SEPTEMBER 9, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1062-MR

LUIS O. GARCIA MARTINEZ                 APPELLANT

               APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE ANGELA MCCORMICK BISIG, JUDGE
               ACTION NO. 16-CR-000242

COMMONWEALTH OF KENTUCKY             APPELLEE

OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: GOODWINE, MAZE, AND K. THOMPSON, JUDGES.

MAZE, JUDGE: Luis O. Garcia Martinez (Martinez)[1] appeals from a judgment of

conviction by the Jefferson Circuit Court. He argues that he was unfairly

---

[1] The Commonwealth's/Appellee's brief spells the defendant's/Appellant's last name as
"Martines." That spelling also occurs at various points in the record below. However, the name
is spelled as "Martinez" in the indictment and in the Appellant's brief. In addition, his last name

prejudiced by his exclusion from a bench conference and because the Commonwealth presented the testimony of a witness who it had previously stated would not testify. These issues are not preserved for review, and we find no palpable error or prejudice occurred as a result. However, we agree with Martinez that he was entitled to directed verdicts on the charges of tampering with physical evidence and first-degree fleeing or evading police. But he was not entitled to a directed verdict on the charge of second-degree disorderly conduct. Finally, we conclude that the trial court did not err in denying Martinez's motion to suppress evidence seized during and following his arrest. Hence, we reverse in part, affirm in part, and remand for entry of a new judgment and sentence as set forth below.

## I.   Facts and Procedural History

On January 28, 2016, a Jefferson County grand jury returned an indictment charging Martinez on charges of first-degree trafficking in a controlled substance (heroin), first-degree trafficking in a controlled substance (cocaine), first-degree fleeing or evading police, third-degree assault, tampering with physical evidence, resisting arrest, second-degree disorderly conduct, possession of marijuana, and alcohol intoxication in a public place. The charges against

is sometimes listed as "Garcia Martinez" or "Garcia-Martinez." This is consistent with the common form for Spanish surnames, which typically employ a paternal surname followed by a maternal surname, with the paternal surname being primary. But the defendant/Appellant is most commonly referred to as "Martinez," and we will continue to use this name and spelling in the interest of consistency.

-2-

Martinez and the issues on appeal stem from an interaction he had with two Louisville Metro Police Department (LMPD) officers on October 29, 2015. Around midnight on that date, Officers John Chenault and Joseph Hardison heard yelling while on patrol in the Beechmont neighborhood of Louisville. They followed the noise for several blocks and found Martinez on an apartment patio, which sat two-to-three feet below grade and behind a row of bushes. Martinez was surrounded by empty beer cans. His eyes were bloodshot and he was yelling at a woman inside.

The officers then asked Martinez what was going on. He motioned to a woman standing inside the apartment and said, "It's my girlfriend, my girlfriend." However, the woman shook her head indicating "no." Officer Chenault directed Martinez to step up off the patio and then Officer Hardison told him to sit down on the sidewalk. Instead, Martinez took off running.

During the ensuing chase, Officer Hardison saw Martinez drop a white plastic bag in a parking lot. The officers continued after Martinez, chasing him back and forth across Third Street several times and onto the grounds of a nearby apartment complex. Once there, the officers tackled Martinez and used a Taser to subdue him.

After Martinez was in custody, Officer Hardison retraced his steps to recover a flashlight that he had dropped during the chase. In addition, Officer

Hardison found the white bag that Martinez had dropped. The bag contained marijuana, heroin, cocaine, jewelry, and twelve pages of notes written in Spanish. The officers also recovered a substantial amount of currency from Martinez.

Prior to trial, Martinez moved to suppress evidence seized from him at the time of his arrest. Following a hearing, the trial court denied the motion. The matter then proceeded to a jury trial in May 2021. The jury ultimately found Martinez not guilty of alcohol intoxication in a public place, but guilty of the remaining charges. The jury fixed his sentence at a total of seven years' imprisonment, which the trial court imposed. After trial, Martinez moved for new trial or a judgment notwithstanding the verdict. The trial court denied the motion. This appeal followed. Additional facts will be set forth below as necessary.

## II.    Issues Relating to the Testimony of Officer Hardison

Martinez first raises several issues involving the testimony of Officer Hardison. After the jury was seated, the Commonwealth called Officer Chenault as its first witness. In pertinent part, Officer Chenault began to narrate his account of the encounter with Martinez while the body-cam video from Officer Hardison played for the jury. Martinez objected to Officer Chenault's testimony about what Officer Hardison saw, stated, or observed. The trial court agreed and limited Officer Chenault's testimony accordingly.

During a break in Officer Chenault's testimony, Juror 2724170 approached the bench and informed the trial court that she recognized Officer Hardison's name and his voice in the video. She told the court that she and Officer Hardison had been friends about fifteen years earlier, but the friendship ended when he assaulted her. Concluding that the juror could not be impartial, the trial court excused her from jury service.

During the bench conference, the Assistant Commonwealth's Attorney advised the court that "we're not calling [Officer Hardison] as a witness." But near the end of the Commonwealth's case, the Commonwealth called Officer Hardison to the stand. Officer Hardison explained that he had just returned from military leave and the Commonwealth offered that it had been unsure whether he would be available for trial. Martinez's counsel did not object to Officer Hardison's testimony.

### A. Deprivation of Right to Be Present at Critical Stages of the Proceeding

Martinez first contends he was deprived of his constitutional right to be present at all critical stages of the proceedings. Martinez was present in the courtroom and had an interpreter. However, he remained at the counsel table during the bench conference with Juror 2724170. Furthermore, it does not appear from the record that the interpreter provided Martinez with a translation of the discussion at the bench.

Martinez argues that his absence from the bench conference prevented him from fully participating in his own defense. He asserts that the bench conference revealed information substantially related to Officer Hardison's credibility. As a result, Martinez maintains that his absence from the bench conference frustrated his Sixth Amendment right to confront and cross-examine Officer Hardison.

As noted, Martinez's counsel did not object either to Martinez's absence at the bench conference or to Officer Hardison's later testimony. Martinez essentially argues that they may be reviewed as structural errors despite their lack of preservation. In the alternative, Martinez asks this Court to review the issues under the palpable error standard of RCr[2] 10.26.

We disagree that Martinez's claims on these issues amount to structural error. Structural errors "affect[] the framework within which the trial proceeds, rather than being simply an error in the trial process itself." *Weaver v. Massachusetts*, ___ U.S. ___, 137 S. Ct. 1899, 1907, 198 L. Ed. 2d 420 (2017) (internal quotation marks and citation omitted). As such "a structural error def[ies] analysis by harmless error standards." *Id.* at 1907-08 (internal quotation marks and citation omitted). "Structural errors are rare." *Crossland v. Commonwealth*, 291

---

[2] Kentucky Rules of Criminal Procedure.

S.W.3d 223, 232 (Ky. 2009). Moreover, the structural error has only been found in seven circumstances: (1) complete denial of counsel; (2) biased trial judge; (3) racial discrimination in selection of grand jury; (4) denial of self-representation at trial; (5) denial of public trial; (6) defective reasonable-doubt instruction; and (7) erroneous deprivation of the right to counsel of choice. *McCleery v. Commonwealth*, 410 S.W.3d 597, 605 (Ky. 2013) (citations omitted). In this case, Martinez's absence from a single bench conference, during which he was represented by counsel, did not affect the entire framework of the trial so as to render the proceedings fundamentally unfair.

Since Martinez did not preserve this objection, our review is limited to palpable error. An error is palpable when it affects the substantial rights of a party and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error. RCr 10.26. To determine whether manifest injustice has occurred, an appellate court must find that on the whole case there is a substantial possibility that the result would have been different had the error not occurred. *Barker v. Commonwealth*, 341 S.W.3d 112, 114 (Ky. 2011).

It is well-established that a defendant has a right to be present and represented by counsel at all critical stages of a criminal proceeding. *See Tennessee v. Lane*, 541 U.S. 509, 523, 124 S. Ct. 1978, 1988, 158 L. Ed. 2d 820 (2004). We agree with Martinez that the bench conference was a critical stage of

the criminal proceeding.  *Allen v. Commonwealth*, 410 S.W.3d 125, 139 (Ky. 2013).  However, the right to be present at all critical stages of a criminal proceeding is not absolute.  *See* RCr 8.28.  Unlike in *Allen*, Martinez was not representing himself – he was represented by counsel who fully participated in the bench conference involving the juror.  Thus, the trial court's failure to include Martinez in the bench conference did not affect his substantial rights.

Furthermore, Martinez fails to establish that he suffered any prejudice due to his absence from the bench conference.  Martinez asserts that he would have asked his counsel to cross-examine Officer Hardison about the alleged assault on the juror.  But as the Commonwealth notes, the proposed cross-examination would have involved a collateral matter and would have been subject to the relevancy limitations of KRE[3] 402.  *See also Davenport v. Commonwealth*, 177 S.W.3d 763, 772 (Ky. 2005).  Furthermore, prior bad acts are generally not admissible unless the court determines that the conduct is probative of truthfulness.  KRE 403, 404, and 608.  Martinez offers no explanation of how an allegation of assault, dating back more than a decade, would have been relevant or admissible.  Therefore, he cannot establish any prejudice resulting from his absence from the bench conference.

---

[3] Kentucky Rules of Evidence.

*B. Unfair Surprise*

Martinez next argues that he was unfairly surprised by Officer Hardison's testimony after the Commonwealth stated he would not appear. Martinez notes that Officer Hardison was the only witness who could testify to seeing him drop the bag containing the drugs. Martinez contends that he was misled by the Commonwealth's statement that Officer Hardison would not testify and that it affected counsel's ability to cross-examine him.

As previously noted, Martinez's counsel did not object when Officer Hardison was called. Therefore, we must also review this issue under the palpable error standard. As an initial matter, there was no evidence the Commonwealth intentionally misled the trial court or the defense. During the bench conference, the Commonwealth stated that it did not intend to call Officer Hardison to testify. In addition, the Commonwealth advised the court that it was unsure whether Officer Hardison would be available for trial because he was on military leave. Given the changing circumstances of trial and the availability of Officer Hardison, we find no indication that the Commonwealth intentionally misrepresented its intentions.

Furthermore, Martinez has failed to identify any substantial prejudice from allowing Officer Hardison to testify. The Commonwealth identified Officer Hardison as a potential witness in its pre-trial disclosures. The Commonwealth's

statements occurred after trial had begun and could not have affected defense counsel's ability to prepare. And as discussed above, the allegations about Officer Hardison probably would not have been admissible. Therefore, we agree with the Commonwealth that Martinez failed to show a substantial possibility that the outcome of the trial was affected.

### III. Denial of Motions for Directed Verdict

Martinez next argues that he was entitled to directed verdicts on the charges of tampering with physical evidence, fleeing or evading police, and disorderly conduct. On appellate review, a trial court's denial of a motion for directed verdict should only be reversed "if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt[.]" *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3, 4-5 (Ky. 1983)). In determining whether to grant a motion for directed verdict, the trial court must consider the evidence as a whole, presume the Commonwealth's proof is true, draw all reasonable inferences in favor of the Commonwealth, and leave questions of weight and credibility to the jury. *Id.* To sustain a motion for a directed verdict, the Commonwealth must produce less than a "mere scintilla of evidence." *Id.* at 188.

*A. Tampering With Physical Evidence*

KRS[4] 524.100 makes it unlawful for a person to tamper with physical evidence. In relevant part, that statute provides the following:

> (1) A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he:
>
> > (a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding; . . . .

The statute requires the Commonwealth to "prove both that the defendant committed one of the proscribed criminal acts – [d]estroys, mutilates, conceals, removes, or alters – and that the defendant did so with the intent to impair its verity or availability." *McGuire v. Commonwealth*, 595 S.W.3d 90, 98 (Ky. 2019) (internal quotation marks and citation omitted). In *Commonwealth v. James*, 586 S.W.3d 717, 731 (Ky. 2019), our Supreme Court held that, "where a defendant merely drops, throws down, or abandons drugs in the vicinity of the defendant and in the presence and view of the police, and the officer can quickly and readily retrieve the evidence, the criminal act of concealment or removal has not taken place."

---

[4] Kentucky Revised Statutes.

Likewise, Martinez argues that his actions in dropping the plastic bag in plain view of Officer Hardison cannot amount to concealment within the meaning of KRS 524.100. The Commonwealth agrees that, under *McGuire* and *James*, a directed verdict would be appropriate on the charge of tampering with physical evidence. Since the Commonwealth has conceded the error, we will set aside the conviction for tampering with physical evidence.[5]

### B. Fleeing or Evading Police

KRS 520.095(1)(b) criminalizes pedestrian flight from police, when the "person knowingly or wantonly disobeys an order to stop, given by a person recognized to be a peace officer[.]" In addition, the statute requires the presence of an aggravating circumstance, in this case, "[b]y fleeing or eluding, the person is the cause of, or creates a substantial risk of, serious physical injury or death to any person or property[.]" *See Bell v. Commonwealth*, 122 S.W.3d 490, 496 (Ky.

---

[5] The Commonwealth reserved its right to file supplemental briefing based upon the outcome of the Kentucky Supreme Court's decision in *Commonwealth v. Bell*, No. 2021-SC-0252-DG. The Kentucky Supreme Court heard oral arguments in that case in June 2022, but no opinion in that case has been rendered as of this writing. Furthermore, the controlling issue in *Bell* was whether the defendant's "furtive but futile acts" of attempting to hide a bag of drugs amounted to concealment within the meaning of the statute. This Court concluded that it did not because the drugs remained in plain view despite the defendant's efforts. *Bell v. Commonwealth*, No. 2019-CA-1260-MR, 2021 WL 2274313, at *2 (Ky. App. Jun. 4, 2021), *review granted* (Oct. 20, 2021). Regardless of the outcome in *Bell*, we conclude that *McGuire* and *James* remain applicable because there was no evidence in this case that Martinez attempted to conceal his actions by dropping the bag out of the sight of Officer Hardison.

2003).  Martinez challenges the sufficiency of the evidence on both of these elements.

First, Martinez argues that there was no evidence he "knowingly or wantonly" disobeyed an order to stop.  He points out that he primarily speaks Spanish with only limited English skills.  In fact, the officers needed to translate a simple command such as "sit down" so that Martinez could understand it.  As a result, Martinez contends there was no evidence he understood the officers' orders to stop fleeing.

Second, Martinez contends that there was no evidence that his fleeing from the police was the cause of or created a substantial risk of serious physical injury to any person or property.  He notes that it was around midnight; there was very little traffic on Third Street while he was fleeing from the officers.  He contends that any risk of harm to the officers was merely speculative and not sufficient to support the charge of first-degree fleeing or evading.

In response, the Commonwealth notes that Martinez demonstrated an understanding of basic English.  The Commonwealth also points to Officer Hardison's testimony that there was traffic on Third Street despite the late hour. The Commonwealth also notes that both officers fell during the chase.  Thus, the Commonwealth argues that there was sufficient evidence to submit this charge to the jury.

Martinez clearly disobeyed the officers' commands to stop fleeing. The only question was whether he understood that command. There was sufficient evidence for the jury to infer that he did. The more difficult question is whether Martinez's act of fleeing or eluding police created "a substantial risk of death or serious physical injury."

> Generally speaking, however, we would observe that a *substantial* risk is a risk that is "[a]mple," "[c]onsiderable in . . . degree . . . or extent," and "[t]rue or real; not imaginary." Accordingly, it is clear that not all risks are substantial – hence the phrase "low risk" – and not every hypothetical scenario of "what might have happened" represents a substantial risk. In any trial, the issue of whether a defendant's conduct creates a substantial risk of death or serious physical injury "depends upon proof" and reasonable inferences that can be drawn from the evidence.

*Bell*, 122 S.W.3d at 497 (citations omitted).

In *Bell*, the defendant dropped a handgun while fleeing from the police. The Commonwealth argued that this created a substantial risk of harm because it could have gone off and injured the officers. The Kentucky Supreme Court emphasized that not every potential risk constitutes a "substantial" risk of harm under the statute. *Id.* at 498-99. In contrast, a defendant who drives erratically while fleeing from police clearly creates a substantial risk of harm to other persons or property. *See Crain v. Commonwealth*, 257 S.W.3d 924, 929 (Ky.

-14-

2008), and *Lawson v. Commonwealth*, 85 S.W.3d 571, 576 (Ky. 2002), *overruled on other grounds by Hall v. Commonwealth*, 551 S.W.3d 7 (Ky. 2018).

In this case, there was no evidence of any significant traffic on Third Street during the chase. Likewise, there was no evidence that Martinez ran out in front of vehicles or that the officers were required to do so during the chase. And while the officers fell during the chase, there was no evidence that they were placed at risk of "serious physical injury." Consequently, we must agree that Martinez was entitled to a directed verdict on the charge of first-degree fleeing or evading police.

### C. Second-degree Disorderly Conduct

A person is guilty of disorderly conduct in the second degree when in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he:

(a) Engages in fighting or in violent, tumultuous, or threatening behavior;

(b) Makes unreasonable noise;

(c) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard, or other emergency; or

(d) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.

KRS 525.060(1).

Martinez argues that the patio of his girlfriend's apartment was not a "public place" within the meaning of the statute. However, the Kentucky General Assembly defined "public place" in KRS 525.010(3) as:

> "Public place" means a place to which the public or a substantial group of persons has access and includes but is not limited to highways, transportation facilities, schools, places of amusements, parks, places of business, playgrounds, and hallways, lobbies, and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence. An act is deemed to occur in a public place if it produces its offensive or proscribed consequences in a public place.

This definition is applicable to all offenses set out in KRS Chapter 525. In *Maloney v. Commonwealth*, 489 S.W.3d 235, 241 (Ky. 2016), the Kentucky Supreme Court further clarified that:

> KRS 525.010(3) provides a definition of a "public place" but that definition is not exhaustive, and while this Court has not explicitly stated whether a porch would be considered a public place, our previous decisions make it clear that Appellant's porch was open at least to limited access by the general public, which would include inquisitive police officers.

The Court in *Maloney* concluded that the front porch of a residence was a "public place" because it was "open at least to limited access by the general public[.]" *Id.* The dissent instead relies upon *Pace v. Commonwealth*, 529 S.W.3d 747 (Ky. 2017), which held that a partially-walled back patio was within the protected curtilage of the home. *Id.* at 756. However, the issue in *Pace* concerned

-16-

whether the officers lawfully entered onto the patio for purposes of the Fourth Amendment. The Supreme Court held that the patio enjoyed curtilage protection. Consequently, the officers could not have maintained a lawful vantage point when viewing items inside the apartment that were only visible from the patio. *Id.*

The current case, unlike *Pace*, did not involve a warrantless entry or search. Officers Chenault and Hardison did not enter onto the patio. They merely viewed Martinez from the vantage of the public sidewalk adjacent to the patio, and they directed him to step off the patio onto the sidewalk. Consequently, the Fourth Amendment analysis applied in *Pace* is not applicable here.

Rather, the only question is whether the patio was a "public place" within the definition set out in KRS 525.010(3). As a result, the analysis set out in *Maloney* is directly applicable. The patio in this case was somewhat more secluded than in *Maloney* – it was several feet below grade level and at least partially behind a row of bushes. Nevertheless, we conclude that, like the porch in *Maloney*, it was open to at least limited access by the general public. Moreover, the statute provides that "[a]n act is deemed to occur in a public place if it produces its offensive or proscribed consequences in a public place." KRS 525.010(3). Even if the apartment patio was private, the officers could hear Martinez's shouting from several blocks away. Under the circumstances, there was at least a jury issue whether the patio could be considered a "public place" for purposes of

the disorderly conduct statute.  Therefore, the trial court did not err by denying

Martinez's motion for a directed verdict on the charge of second-degree disorderly

conduct.

### IV.    Denial of Motion to Suppress

Finally, Martinez argues that the trial court erred by denying his pre-

trial motion to suppress evidence seized from him at the time of his arrest.  RCr

8.27 sets out the procedure for conducting a suppression hearing.  When the trial

court conducts a hearing, our standard of review is two-fold.  "First, the factual

findings of the court are conclusive if they are supported by substantial

evidence[;]" and second, this Court conducts "a *de novo* review to determine

whether the [trial] court's decision is correct as a matter of law."  *Stewart v.*

*Commonwealth*, 44 S.W.3d 376, 380 (Ky. App. 2000) (footnotes omitted) (citing

*Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky. 1998)).

Martinez argues that Officers Chenault and Hardison lacked any

reasonable suspicion to detain him or to pursue him when he fled.  Consequently,

he maintains that any evidence seized as a result of the stop should have been

suppressed.  However, both officers testified that they could hear yelling from

several blocks away.  And as discussed above, the officers had a reasonable basis

to believe that the patio was a public place.  They also observed that Martinez

appeared to be intoxicated.  And from the reaction given by the woman inside the

apartment, the officers reasonably concluded that she did not want Martinez to be on her patio. Accordingly, the officers had a reasonable suspicion to justify the initial investigatory stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

Martinez correctly notes that "flight, in and of itself, is insufficient to establish probable cause." *Commonwealth v. Jones*, 217 S.W.3d 190, 197 (Ky. 2006) (citing *United States v. Margeson*, 259 F. Supp. 256, 265 (E.D. Pa. 1966)). However, the probable cause standard is a "'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Williams v. Commonwealth*, 147 S.W.3d 1, 7 (Ky. 2004) (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 103 S. Ct. 2317, 2328, 76 L. Ed. 2d 527 (1983) (additional citations omitted)). Unlike in *Jones*, Martinez fled after the officers clearly established a reasonable suspicion for the stop. And Martinez did not simply "walk away once he noticed the presence of authorities[,]" like the defendant in *Jones*. 217 S.W.3d at 197.

Rather, the facts of this case more closely resemble those in *Hunter v. Commonwealth*, 587 S.W.3d 298 (Ky. 2019), where the defendant fled after the officers identified themselves and directed him to stop. *Id.* at 307-08. Although this evidence was not sufficient to sustain the charge of first-degree fleeing or

evading, it was sufficient to support a finding of probable cause for the pursuit and arrest. *Id.* Likewise, the trial court in this case did not clearly err in finding that the officers had probable cause to pursue and arrest Martinez after he defied their orders to stop and fled. In any event, Officer Hardison recovered the bag containing the drugs after Martinez had discarded it. Thus, that evidence was not "seized" from him within the meaning of the Fourth Amendment. *See United States v. Martin*, 399 F.3d 750, 753 (6th Cir. 2005). Therefore, the trial court properly denied Martinez's motion to suppress evidence obtained following his arrest.

## V.    Conclusion

Based on the foregoing, we reverse Martinez's convictions for tampering with physical evidence and first-degree fleeing or evading police. However, we affirm Martinez's remaining convictions. This matter is remanded to the Jefferson Circuit Court for entry of a new judgment consistent with this Opinion.

GOODWINE, JUDGE, CONCURS.

THOMPSON, K., JUDGE, CONCURS IN PART, DISSENTS IN PART, AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE, CONCURRING IN PART AND DISSENTING IN PART: With one exception, I agree with the majority's resolution of this case. I

-20-

disagree with the majority Opinion that Martinez was properly convicted of second-degree disorderly conduct "in a public place" under KRS 525.060.

The majority has determined that the back patio of the apartment where Martinez was heard shouting was a "public place" by relying on *Maloney v. Commonwealth*, 489 S.W.3d 235 (Ky. 2016). In *Maloney*, the area in question was the porch abutting the front door of a residence. The porch was not gated and there was no other impediment indicating that the porch was an "exclusively private area, unavailable to members of the public seeking to approach the residence for a legitimate purpose." *Id.* at 241-42.

However, I am more persuaded by the opinion in *Pace v. Commonwealth*, 529 S.W.3d 747 (Ky. 2017), whose facts closely resemble those in the present case and involved a determination as to whether a back patio was within the protected curtilage of a home. I believe there is a large distinction between a front porch and a back patio.

In *Pace*, the Kentucky Supreme Court applied the four-factor test set forth in *United States v. Dunn*, 480 U.S. 294, 107 S. Ct. 1134, 94 L. Ed. 2d 326 (1987), and determined that the back patio was within the protected curtilage of the house. The *Dunn* factors are "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] steps taken by the

resident to protect the area from observation by people passing by." *Pace*, 529 S.W.3d at 756 (quoting *Dunn*, 480 U.S. at 301, 107 S.Ct. at 1139).

In *Pace*, the Court explained how the following facts applied to each *Dunn* factor: (1) "the patio was attached and immediately adjacent to the apartment. In fact, a sliding glass door was the only object separating the inside of the home to the patio[;]" (2) "the patio was partially enclosed by a five foot, four inch tall brick wall. This wall provided Appellants' with privacy[;]" (3) "the nature of Appellants' patio use was not revealed during the suppression hearing. Even so, it is common knowledge that a back yard, porch, or patio is an area where private domestic activities extend[;]" and (4) "the patio . . . was accessible via a public walkway and was not totally enclosed by a fence or gate." *Pace*, 529 S.W.3d at 756. As to this fourth factor, the Kentucky Supreme Court disagreed that a patio could not be part of the curtilage because the homeowner had not "totally enclose[d] an area in order to ensure curtilage protection." *Id.*

The subterranean rear patio at issue here was attached to the back of the apartment, was partially enclosed by a wall of bushes, and sat two to three feet below grade but was not totally separated from the walkway. These facts, when considered pursuant to the *Dunn* factors, merit reversal as this patio was within the curtilage of the residence. Therefore, Martinez could not be found guilty of disorderly conduct in a public place.

Accordingly, I dissent.

BRIEFS FOR APPELLANT:

Christopher B. Thurman
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Harrison Gray Kilgore
Assistant Attorney General
Frankfort, Kentucky