RENDERED:  MARCH 13, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0465-MR

BRADLEY ARD
APPELLANT

APPEAL FROM CAMPBELL CIRCUIT COURT
v.        HONORABLE JULIE REINHARDT WARD, JUDGE
ACTION NO. 24-CR-00311

COMMONWEALTH OF KENTUCKY
APPELLEE

<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  CALDWELL, COMBS, AND EASTON, JUDGES.

EASTON, JUDGE:  Bradley Ard (Ard) appeals the decision of the Campbell Circuit Court denying his motion to suppress evidence following his arrest for public intoxication.  Ard argues the arresting officer did not have probable cause to arrest him.  As a result, the warrantless search that occurred after his arrest was illegal.  A jury later convicted Ard of possessing illegal drugs.  Finding no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On June 14, 2024, just before 7:00 p.m., Lt. Daron Arnberg (Arnberg) with the Newport Police Department was on patrol with Lt. Kohls (Kohls). While travelling northbound on US 27, Arnberg noticed Ard near the entrance to a Walgreens. Ard was slumped over a shopping cart and appeared to be possibly passed out. Arnberg decided they needed to speak with Ard to determine if he was having a medical emergency or was intoxicated. The officers proceeded to enter the parking lot to speak with Ard.

When Arnberg approached Ard, Ard stood up, but he continued to hold onto the shopping cart. A verbal exchange took place. The circuit court, in denying Ard's motion to suppress, outlined the conversation between Ard and Arnberg in its Order. We will repeat the quoted statements from that Order:

Arnberg: "Hey, what's going on?"

Defendant: "Nothing."

Arnberg: "Really?"

Defendant: "Yeah."

Arnberg: "Having a hard time staying awake it looks like?"

Defendant: "No, I'm waiting on my aunt."

Arnberg: "Are you under a doctor's care for anything sir?"

Defendant: "No sir.  I'm waiting on my aunt, brother."

Arnberg: "Do you have any weapons on you?"

Defendant: "No sir."  (Defendant thereafter patted his pockets).

Arnberg: "Don't reach in your pockets.  Do you mind if I search you?"

Defendant: "Uh, yes."

Arnberg: "You do?"

Defendant: "Yes sir, I do."

Arnberg: "You have an I.D.?"

Defendant: "Yes sir, you want me to grab it?"

Arnberg: "No."

Defendant: "Okay?  I'm not doing nothing."

Arnberg: "Um, do you have anything on you that's illegal?"

Defendant: "No.  But, I just want to know why you're stopping me?"

Kohls: "Because you were slumped over your cart."

Arnberg: "Okay put your hands behind your back."[1]

From what he observed during this interaction, Arnberg believed Ard was intoxicated and specifically under the influence of a narcotic, and he placed him under arrest. Upon searching Ard, he located several syringes, marijuana, and a small packet of a powder substance which Arnberg then believed to be heroin.

In August 2024, Ard was indicted for First-Degree Possession of a Controlled Substance (fentanyl), Possession of Drug Paraphernalia, Possession of Marijuana, and Public Intoxication, Controlled Substance. In December 2024, Ard filed a motion to suppress all the evidence recovered from the search of his person. He argued that Arnberg did not have probable cause to arrest him for public intoxication; thus the warrantless search was illegal.

A suppression hearing was held on January 23, 2025. At this hearing, Arnberg alone testified about his observations of Ard on June 14, 2024. Additionally, Arnberg's body cam footage was played to the circuit court, in which the previously-outlined exchange was captured.

Arnberg stated that he noticed Ard while they were driving by the Walgreens, from about thirty yards away. He stated he saw Ard slumped over a shopping cart near the front doors, and he appeared to be passed out. He and Kohls then went to speak with Ard.

---

[1] Order of February 3, 2025, Trial Record (TR) at 102-03.

In addition to the conversation that took place, Arnberg testified that Ard had restricted "pinpoint" pupils, which is an indication of someone being under the influence of certain often illegal substances. Arnberg also stated Ard was acting very tired and sluggish. Arnberg felt the need to maintain physical contact with Ard throughout the encounter to ensure Ard didn't lose his balance and fall over. Arnberg stated that in many cases of overdose, people will sometimes pass out, although Ard did not do so on this occasion.

The circuit court ultimately ruled there was probable cause for Arnberg to arrest Ard for public intoxication and denied Ard's motion to suppress the items seized from his person after his arrest. A jury trial was held on February 10 and 11, 2025. The jury found Ard guilty of Possession of a Controlled Substance, First Degree (fentanyl); Possession of Drug Paraphernalia; and Possession of Marijuana. The jury found Ard not guilty of Public Intoxication, Controlled Substances. The jury recommended three years for the Possession of Controlled Substance, First Degree, conviction; twelve months for the Possession of Drug Paraphernalia conviction, and 45 days for the Possession of Marijuana conviction, which sentences by law must be run concurrently for a total of three years. The circuit court sentenced Ard accordingly on March 12, 2025. Ard now appeals as a matter of right.

## STANDARD OF REVIEW

"The standard of review for a trial court's ruling on a suppression motion is two-fold. We review the trial court's factual findings for clear error, and deem conclusive the trial court's factual findings if supported by substantial evidence. The trial court's application of the law to the facts we review de novo." *Williams v. Commonwealth*, 364 S.W.3d 65, 68 (Ky. 2011) (citations omitted).

## ANALYSIS

Ard argues to this Court, as he did to the circuit court, that Arnberg lacked probable cause to arrest him for public intoxication, and so any evidence seized from the warrantless search must be suppressed.

"Citizens are protected from unreasonable government searches and seizures by the Fourth Amendment of the United States Constitution and Section 10 of the Kentucky Constitution." *Commonwealth v. Wilson*, 625 S.W.3d 252, 255 (Ky. App. 2021). "Warrantless searches are '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Robbins v. Commonwealth*, 336 S.W.3d 60, 63 (Ky. 2011) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)). "One of the exceptions is a search incident to a lawful arrest, which permits an officer to search an arrestee's person and the area within his immediate control for weapons or concealed evidence." *Id.*

"The exclusionary rule provides that evidence obtained through an illegal search or seizure is not admissible against an accused. The rule includes evidence stemming directly from official misconduct as well as derivative evidence that is tainted or fruit of the poisonous tree." *Stevens v. Commonwealth*, 354 S.W.3d 586, 590 (Ky. App. 2011) (citations omitted). Ard argues that the evidence seized subsequent to his arrest for public intoxication must be suppressed because Arnberg lacked probable cause to arrest him, making his arrest illegal.

An officer may make an arrest without a warrant when there is probable cause to believe that the person has committed a felony. *Commonwealth v. Marshall*, 319 S.W.3d 352, 356 (Ky. 2010), KRS 431.005(1)(c). An officer may make a warrantless arrest for a misdemeanor when it has been committed in his presence. *Commonwealth v. Mobley*, 160 S.W.3d 783, 786 (Ky. 2005); KRS 431.005(1)(d). Public intoxication is a Class B misdemeanor. In order for Ard's arrest to be lawful, Arnberg must have had probable cause to believe Ard was committing that offense in his presence.

"To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Id.* (internal quotation marks and citation omitted). "Probable cause has been defined as 'reasonable grounds for

belief, supported by less than prima facie proof but more than mere suspicion.'"

*Commonwealth v. Bennett*, 553 S.W.3d 268, 270 (Ky. App. 2018) (quoting

*Commonwealth v. Lemons*, 437 S.W.3d 708, 715 (Ky. 2014)).

The crime of public intoxication, controlled substances, is governed

by KRS 525.100, which states: "(1) A person is guilty of public intoxication when

he appears in a public place manifestly under the influence of a controlled

substance, or other intoxicating substance, excluding alcohol (unless the alcohol is

present in combination with any of the above), not therapeutically administered, to

the degree that he *may* endanger himself or other persons or property, or

unreasonably annoy persons in his vicinity." (Emphasis added.)

Arnberg testified, and the body cam footage corroborated, that Ard

was standing near the entrance to a Walgreens during the early evening when the

store was open and there were many customers around. Ard was seen slumped

over a shopping cart, appearing to be unconscious. Arnberg noticed that

something was abnormal from approximately thirty yards away. Upon closer

inspection, Ard had pinpoint pupils that Arnberg said did not change, even after

moving out of the sunlight and into a shadier area. Ard was sluggish and appeared

unsteady on his feet. The circuit court's findings of fact were:

> Based on the totality of the circumstances, there was
> probable cause that the Defendant was under the
> influence of a controlled substance. The fact that
> Officers Arnberg and Kohls observed Defendant

appearing to be unconscious leaning against a shopping cart shows that his level of intoxication could have resulted in the Defendant endangering himself, such as falling, or getting hit by a motor vehicle due to his proximity to a busy highway. Additionally, his level of intoxication may have unreasonably annoyed others in his vicinity. He was directly in front of the entryway to the Walgreens. He was unavoidable for any individual seeking to enter the building. He was at Walgreens around 6:51 p.m. at a busy location, on a weekday, during prime shopping hours. There were families, with children among them, noted on the body camera footage, seeking to enter the store. There were reasonable grounds to believe based on the totality of the circumstances that he may have been unreasonably annoying others in his vicinity. Therefore, Lt. Arnberg had probable cause to arrest Defendant for public intoxication.[2]

The circuit court's findings of fact are supported by substantial evidence. Under these circumstances, Arnberg had probable cause to arrest Ard for public intoxication.

Ard concludes his argument by pointing out that the jury acquitted him of the public intoxication charge. While true, this is irrelevant. There is a substantial difference between the standards of "beyond a reasonable doubt" required to convict for a charge, and "probable cause" required for an arrest. *See generally S.W. v. S.W.M.*, 647 S.W.3d 866 (Ky. App. 2022); *Benton v. Commonwealth*, 598 S.W.3d 102, 106 (Ky. App. 2020).

---

[2] Circuit Court Order, TR at page 105.

## CONCLUSION

Because there was probable cause to arrest Ard, the warrantless search incident to his arrest was reasonable and lawful. The evidence found on Ard's person was admissible. We AFFIRM the Campbell Circuit Court.

COMBS, JUDGE, CONCURS.

CALDWELL, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

CALDWELL, JUDGE, DISSENTING: I respectfully dissent. There simply is not evidence to support a finding of probable cause for the arrest of Ard for the crime of public intoxication. Therefore, evidence obtained by the search of Ard incident to his arrest should be suppressed.

As stated in the majority opinion, "An officer may make a warrantless arrest for a misdemeanor when it has been committed in his presence. *Commonwealth v. Mobley*, 160 S.W.3d 783, 786 (Ky. 2005); KRS 431.005(1)(d). Public Intoxication is a Class B misdemeanor. In order for Ard's arrest to be lawful, Arnberg must have had probable cause to believe Ard was committing that offense in his presence." (Majority Opinion at p. 7.) To the extent that the charge requires the party to be intoxicated for the crime of public intoxication, there may be enough substantial evidence to support a finding of probable cause that Ard was intoxicated. But as to the remaining requirements of KRS 525.100, that: 1) Ard may have been endangering to himself or others or property or; 2) Ard may have

-10-

been unreasonably annoying to persons in his vicinity, there is simply no evidence to support a finding of probable cause.

As made clear in *Maloney v. Commonwealth*, 489 S.W.3d 235, 239 (Ky. 2016), "Alcohol intoxication [in a public place] requires much more than simply 'being' drunk[; i]t requires some behavior that 'manifests,' meaning 'exhibits' or 'demonstrates,' alcohol intoxication 'to the degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity.'" While the defendant/appellant in *Maloney* had been charged with alcohol intoxication in public instead of intoxication due to some other substance, the statute is otherwise identical and law supporting probable cause for arrest is as well.

The majority opinion states: "'Probable cause has been defined as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion."' *Commonwealth v. Bennett*, 553 S.W.3d 268, 270 (Ky. App. 2018) (citing *Commonwealth v. Lemons*, 437 S.W.3d 708, 715 (Ky. 2014))." (Majority Opinion at p. 7.) However, as indicated by the entire conversation, all of about a half a minute, between Officer Arnberg and Ard up to the time of Ard's arrest, as quoted in the trial court's order and the majority opinion, there was no more than, and could have been no more than, mere suspicion at that point. Specifically:

Arnberg: "Um, do you have anything on you that's illegal?"

Defendant: "No. But, I just want to know why you're stopping me?"

Kohls: "Because you were slumped over your cart."

Arnberg: "Okay put your hands behind your back."

(Majority Opinion p. 3.) And this is when Ard is placed under arrest.

Because Ard was slumped over his cart was the reason, as testified to by Officer Arnberg, for driving into the Walgreen's parking lot and checking up on Ard. Officer Arnberg testified that from the roadway, about 30 yards away from where Ard was, he saw Ard slumped over and leaning on a shopping cart and that this looked abnormal to him. In response to the prosecutor's question of what did he (the officer) think was going on, Officer Arnberg stated, "So, uh, there could be one of two issues. He could be having medical issues. He could be intoxicated in public."

However, as is clearly viewed from the body cam video, upon actually approaching Ard, who was several feet to the side of the doorway and on the sidewalk of Walgreens and not in the parking lot, it is apparent that Ard was no longer slumped over. He is holding onto the shopping cart with his phone in one hand and with the other he is smoking a cigarette. At this point begins the entire

conversation between Officer Arnberg and Ard, as quoted in the majority opinion, before Ard is placed under arrest. Also, in response to Officer Arnberg's question of "Do you have any weapons on you?", Ard removes both hands from the shopping cart and pats his front jean pockets. At no time does he stagger, shuffle, or in any way appear unbalanced. Officer Arnberg does not actually reach out and take hold of Ard's upper arm until he has asked, "Do you mind if I search you?"

Certainly, it is proper to defer to the officer's, and the trial court's, perception that Ard was intoxicated at this time, even if intoxication is not apparent from the video. However, as argued by Ard, and as required by *Maloney*, there must be "much more" than being intoxicated in a public place for the actual charge of public intoxication.

And further, as required by *Bennett* and *Lemons*, this "much more" must be more than "mere suspicion" to meet the standard for probable cause for an arrest. So, even deferring to the trial court as to its findings of fact that Ard was intoxicated in a public place, the remainder of facts as found by the trial court simply do not support probable cause for an arrest for public intoxication.

The trial court found that the officers observed Ard "appearing to be unconscious leaning against a shopping cart shows that his level of intoxication could have resulted in the Defendant endangering himself, such as falling, or getting hit by a motor vehicle due to his proximity to a busy highway." As

-13-

observed from the roadway 30 yards away, Ard could have appeared unconscious when leaning on the shopping cart. That certainly supports the officers' driving into Walgreens to further investigate.

However, upon further investigation, and as is plainly clear from the body cam video as the officers approached Ard, Ard was not so intoxicated as to be unconscious or even remotely near unconscious. He was in absolutely no way endangering himself beyond actually being intoxicated or smoking a cigarette. He was not, in any way, endangering anyone else. He was not, in any way, endangering any property. He was 30 yards away from the roadway and well outside the parking lot or driving area of Walgreens.

Further, he was doing absolutely nothing to unreasonably annoy anyone. If by "unavoidable" the trial court meant that he was able to be seen by anyone going in or out of Walgreens, then he was unavoidable. However, he was in no way blocking, obstructing, or otherwise endangering or unreasonably annoying any person entering, leaving, or driving around Walgreens. The fact that "[t]here were families, with children among them, . . . seeking to enter the store," simply goes to the fact that Ard was in a public place. The public intoxication statute does not have an addendum of "or in a public place accessible to children or families" where the remainder of the statute still does not apply.

No doubt Officer Arnberg felt he was serving the public good, and arguably was serving the public good, by removing someone he fairly believed to be intoxicated from a location where there were children. However, the fact that the "public" Ard was amongst included children, does not automatically equate to his being unreasonably annoying, nor does it equate to endangering anyone.

The fact is, Ard was being quiet, was staying out of the way of ingress and egress to the store, was staying out of the way of the cars driving in or out of the parking lot, and essentially minding his own business—smoking a cigarette and looking at his phone. Per Ard's explanation to the officers, he was waiting on his aunt. There was nothing in his actions or his speech, which does not appear delayed in the video, to indicate that he *may* engage in activity that would endanger himself or someone else or property or be unreasonably annoying to anyone else.

That he *may* be more inclined to do any of those things simply because of being intoxicated, even if true, is simply not enough by itself to indicate he may endanger anyone or anything or be unreasonably annoying and thus does not support probable cause for his arrest in this instance. As the analysis in *Maloney* indicates:

> [U]nder the Commonwealth's rationale, anyone and everyone who remained alive after consuming an alcoholic beverage would be subject to arrest for "alcohol intoxication" because anyone "may" at a later time change his current behavior and commence behaving in a way that presents a danger to himself or others or

becomes unreasonably annoying. To infuse this statute with so broad a construction that it criminalizes virtually any activity or inactivity preceded by alcohol consumption implicates the constitutional prohibitions of vagueness and overbreadth. *See Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971) (City ordinance prohibiting "conduct . . . annoying to person passing by" held unconstitutionally vague because it applies an unascertainable standard and over-broad because it authorizes the punishment of constitutionally protected conduct.)[.]

The legislative history of the crime of public intoxication confirms our belief that the General Assembly did not intend to criminalize the act of being passed out, or asleep, on the porch. In 1974, the General Assembly enacted KRS 525.100, which then prohibited "public intoxication" induced by either alcohol or drugs. KRS 525.100 employed precisely the same standard for defining the punishable range of intoxication that was, in 1986, incorporated into KRS 222.202(1): "manifestly under the influence of alcohol . . . to the degree that he may endanger himself or other persons or property, of unreasonably annoy persons in his vicinity." Commentary published by the Kentucky Crime Commission/Legislative Research Commission concurrently with the 1974 enactment of KRS 525.100 explains that the standard set forth in the new statute "*is intended to require some aberrant behavior on the part of the accused before an arrest is authorized*." (Emphasis added.) The legislature's use of this familiar terminology when it enacted KRS 222.202(1) strongly indicates that the interpretation applicable to the earlier statute was also intended to be applied to the latter statute. The manifestation of guilt under both statutes requires "some aberrant behavior on the part of the accused before an arrest is authorized."

*Maloney*, 489 S.W.3d at 239-40 (footnote omitted).

-16-

I would reverse the trial court here and grant the motion to suppress the evidence seized from Ard subsequent to his arrest.

BRIEFS FOR APPELLANT:

Jennifer Wade
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky